Morgan L. SMITH, Appellant,

v.

Edward J. DERWINSKI, Secretary of Veterans Affairs, Appellee.

No. 90–635.

United States Court of Veterans Appeals.

Submitted Aug. 6, 1991.

Decided Jan. 31, 1992.

Greg Morton, Greenville, S.C., was on the brief, for appellant.

Robert E. Coy, Acting Gen. Counsel, Barry M. Tapp, Asst. Gen. Counsel, Andrew J. Mullen, Deputy Asst. Gen. Counsel, and Stephen A. Bergquist, Washington, D.C., were on the brief, for appellee.

Before NEBEKER, Chief Judge, and HOLDAWAY and IVERS, Associate Judges.

HOLDAWAY, Associate Judge:

Appellant, Morgan L. Smith, appeals a decision of the Board of Veterans' Appeals (BVA) rendered on March 19, 1990. In that decision, the BVA denied appellant entitlement to service connection for bilateral hearing loss. The Court holds that the BVA arbitrarily and capriciously failed to apply 38 U.S.C. § 1154 (formerly § 354) to the facts of this case. Therefore, we vacate the decision of the BVA and remand the case for readjudication.

## FACTS

Appellant served his country in the U.S. Navy during World War II and the Korean conflict. Appellant claims his ears were injured during combat in the Philippine Sea in 1943. He served as automatic weapons officer and was exposed to the intense, continuous firing of the eight-inch, five-inch and forty-millimeter guns during World War II. He claims his ears were injured when a five-inch gun was fired only six inches above his head. He states he suffered a complete loss of hearing for three days and went to sickbay where he was treated with medication for the pain.

Gradually his hearing returned but not to the same level as before. Appellant also claims that his hearing loss was aggravated during his active service in Korea. During the Korean conflict, he served as air defense officer aboard a heavy cruiser and was stationed "topside" where his ears "took a beating" during gunfire, according to appellant. Apart from his duty in service, appellant states he has lived in a low noise environment employed as a banker and an auditor.

The record contains appellant's service medical records and private medical records. The service medical records reveal appellant underwent nearly eighteen medical examinations over the course of his career in the U.S. Navy. Those examinations, in addition to routine physical examinations, included examinations for entry and separation, examinations to qualify for flying, promotions, and reservist training. Some of the medical examination reports contain no medical findings and note simply that a medical examination took place and that appellant was qualified to perform his duties. The record reveals, however, no fewer than nine whispered and spoken voice hearing examinations over the course of his military career.

Appellant's first hearing examination was made upon entry into service in June 1941. That examination measured hearing in both ears at 40/40 inches for a watch tick, 20/20 feet for a coin click, 15/15 feet for a whispered voice and 15/15 feet for a spoken voice. The binaural, spoken voice measurement was 15/15 feet. On the line next to the question "Disease or defects" of the ears, the medical examiner listed "none." In November 1941, appellant's hearing was examined for flying. Hearing was measured at 20/20 feet for a coin click and 15/15 feet for a whispered voice. A history of "ringing or buzzing, earache, or discharge," and "severe injuries to head" were denied. A physical examination of January 1943 indicates the same level of hearing as upon the entrance examination, and no disease or defects were noted. A physical examination of April 1943 revealed the same level of hearing as upon entry into service. A July 1943 physical exami-

nation report indicates his right and left ear were "normal" and hearing was 15/15 feet in both ears. An examination of November 1944, the last examination before separation to inactive duty status as a reservist, also indicates the same level of hearing as upon entry, based upon the whisper and spoken voice test. Appellant was released to inactive duty in August 1945.

Appellant was again placed on active duty in October 1950. The active duty entrance examination indicates hearing at a whispered and spoken voice to be 15/15 feet for both ears. Similarly, hearing was noted to be "15/15 [feet]" on release to inactive duty in August 1952.

On September 10, 1955, three years after separation from service, appellant underwent audiological testing for hearing loss. His physician stated in a letter to appellant, also dated September 10, 1955, that:

The audiogram shows a typical curve of nerve type deafness with rather marked loss of hearing in the left ear, but also rather advanced loss in the right ear in the high tones.

The outlook is not good but I feel that this condition has existed for some time....

A quadrennial medical examination performed by the U.S. Naval Reserve on August 14, 1956, indicated a whispered and spoken voice hearing level of 15/15 feet for both ears.

In 1963, while in the hospital for neurological testing and treatment (for an unrelated ailment), an ear, nose and throat consultation was made with regard to his decreased hearing. The examiner noted that "the patient had nerve deafness, mainly for high tones, bilaterally but more marked in left than right [ear]."

In his November 17, 1988, claim to the Veterans' Administration (now Department of Veterans Affairs) (VA), appellant states he suffered complete hearing loss, and had to sell his certified public accountant's practice because he was unable to serve his clients. He states that he began to receive

social security benefits at the age of sixty-four.

The VA Regional Office (VARO) denied service connection for hearing loss and tinnitus on April 5, 1989, because "service medical records do not show any diagnosis for these disabilities."

Appellant appealed the denial by the VARO to the BVA, and submitted a letter, dated July 31, 1989, from his private physician. That physician stated he had performed an audiometric examination of appellant in 1984 which revealed a "moderate sloping to profound sensorineural hearing loss bilaterally." The physician also stated:

> After discussion of his past hearing history, I could find nothing but his extreme exposure to noise during his service with our armed services to indicate a cause for his hearing loss. In other words, I feel that his history of noise exposure during combat is most likely the cause of his hearing loss. It should also be noted that this degree of loss does render a person unable to work in certain job situations.

On March 19, 1990, the BVA denied appellant entitlement to service connection for bilateral hearing loss. The BVA found that there was "no record of acoustic trauma during the veteran's period of active duty," and that his hearing was "normal" on examination when he was released from active duty in 1952. The BVA also stated there was no objective medical evidence that appellant's hearing loss was present within one year after separation from active duty. *Morgan L. Smith*, BVA 90–12533 (Mar. 19, 1990).

## ANALYSIS

■ A veteran of war is entitled to compensation for any disability "resulting from personal injury suffered ... or for aggravation of a preexisting injury suffered ... in the active military, naval, or air service, during a period of war...." 38 U.S.C. § 1110 (formerly § 310). Congress has directed the Secretary of Veterans Affairs (Secretary) to prescribe regulations to give "due consideration" to the "nature, types and circumstances" of a veteran's service in claims for service connection. 38 U.S.C. § 1154. In a claim for service connection, if the veteran engaged in combat with the enemy, the adverse effect of not having an official report of in-service injury or disease can be overcome by satisfactory lay or other evidence. 38 U.S.C. § 1154; 38 C.F.R. § 3.304(d) (1991). To that end, Congress directed the Secretary to accept as sufficient proof of service connection, the satisfactory lay or other evidence of service incurrence or aggravation if that evidence is consistent with the "circumstances, conditions or hardships of service." 38 U.S.C. § 1154.

Section 1154 states:

(a) The Secretary shall include in the regulations pertaining to service-connection of disabilities (1) additional provisions in effect requiring that in each case where a veteran is seeking service-connection for any disability due consideration shall be given to the places, types and circumstances of such veteran's service as shown by such veteran's service record, the official history of each organization in which such veteran served, such veteran's medical records, and all pertinent medical and lay evidence....

(b) In the case of any veteran who engaged in combat with the enemy in active service with a military, naval, or air organization of the United States during a period of war, campaign, or expedition, the Secretary shall accept as sufficient proof of service-connection of any disease or injury alleged to have been incurred in or aggravated by such service satisfactory lay or other evidence of service incurrence or aggravation ... if consistent with the circumstances, conditions, or hardships of such service, notwithstanding the fact that there is no official record of such incurrence or aggravation in such service, and, to that end, shall resolve every reasonable doubt in favor of the veteran. Service-connection of such injury or disease may be rebutted by clear and convincing evidence to the contrary. The reasons for

granting or denying service-connection in each case shall be recorded in full.

38 U.S.C. § 1154. The regulations implementing § 1154 are at 38 C.F.R. § 3.304(d).

■ Of course, the Secretary is not required to accept every bald assertion made by a veteran as to service incurrence or aggravation of a disability. *See Wood v. Derwinski*, 1 Vet.App. 190 (1991) (the BVA was not required to accept the uncorroborated statements of the veteran regarding service connection). As Congress explained in 1941, when the law which is now § 1154 was enacted, the matter of service connection is a factual determination which must be made by the Secretary based upon the evidence in each individual case; the law does not create a presumption in favor of combat veterans. H.R.Rep. No. 1157, 77th Cong., 1st Sess. (1941), *reprinted in* 1941 U.S.C.C.A.N. 1035. *See also* Act of December 20, 1941, ch. 603, Pub.L. No. 361, 55 Stat. 847 (codified as amended at 38 U.S.C. § 1154). As the legislative history indicates:

> The language of the bill has been carefully selected to make clear that a statutory presumption in connection with determination of service connection is not intended. The question as to whether any disability was or was not incurred in active military service is recognized as a question of fact to be determined upon the evidence in each individual case. It is desired to overcome the adverse effect of a lack of official record of incurrence or aggravation of a disease or injury and treatment thereof.

H.R.Rep. No. 1157, 77th Cong., 1st Sess. (1941), *reprinted in* 1941 U.S.C.C.A.N. 1035.

■ In the instant case, the BVA specifically relied upon the lack of an official record that was contemporaneous with the alleged trauma as to appellant's claimed ear injury, and completely disregarded appellant's own lay evidence, and other evidence of record in determining entitlement to service connection. Such a reliance is in direct conflict with § 1154(b) and 38 C.F.R. § 3.304(d). The BVA may not ignore regulations which the VA has adopted. 38

U.S.C. § 7104(a), (c) (formerly § 4004(a), (c)); *Payne v. Derwinski*, 1 Vet.App. 85, 87 (1990).

■ Appellant was a combat veteran of two wars, whose service, according to appellant, included the invasion of Okinawa, two Philippine battles, and over eighteen other raids and invasions. He was a weapons officer and was stationed "topside" and near the ships guns in both his tours of duty. Certainly his claim that his hearing was injured in World War II by a gun blast and was aggravated by gunfire during the Korean war can be considered to be consistent with the "circumstances, conditions or hardships" of his service in both tours of duty. It is the holding of this Court that the BVA erred in failing to apply § 1154 and 38 C.F.R. § 3.304(d) when determining whether appellant was entitled to service connection.

This is not to say that the BVA must automatically grant appellant service connection upon remand. As stated above, § 1154 and 38 C.F.R. § 3.304(d) do not create a presumption in favor of combat veterans in determinations of service connection. H.R.Rep. No. 1157. In the instant case, there are several in-service whispered and spoken examinations of record which indicate appellant's hearing was "normal" upon examination. The import of this evidence must be weighed and considered. 38 U.S.C. § 7104 (decisions of the BVA shall be based on the entire record and upon consideration of all evidence and applicable provisions of law and regulation). As Congress indicated in 1941, the question of service connection is a question of fact to be determined "upon the evidence in each individual case." H.R.Rep. No. 1157.

Also of record is the medical evidence from appellant's private physicians in 1955 and 1989. The BVA must determine the value and credibility of this evidence. *Smith v. Derwinski*, 1 Vet.App. 235, 237 (1991) (determining the credibility of evidence is a function for the BVA); *Ohland v. Derwinski*, 1 Vet.App. 147, 149 (1991) (remanded in part for failure of the BVA to analyze the credibility or probative value of the evidence). The Court notes that the

BVA has ignored the portion of the physician's opinion rendered in 1955 that stated appellant's hearing loss had existed "for quite some time." The BVA merely states that the 1955 report would have been shown at a period too remote from service to warrant a grant of service connection. The BVA has also ignored the opinion of appellant's physician in 1989 that appellant's history of noise exposure was most likely the cause of hearing loss. As the Court has held in previous decisions, the BVA is not free to ignore the opinion of a treating physician. *Willis v. Derwinski,* 1 Vet.App. 66, 70 (1991).

The BVA also cannot ignore the assertions made by appellant in support of his appeal before the BVA. *EF v. Derwinski,* 1 Vet.App. 324, 326 (1991). In *EF,* this Court held that the BVA breached its duty to assist the veteran in part by failing to include issues raised in the documents and oral testimony submitted prior to the BVA decision. *EF,* 1 Vet.App. at 326. Quoting *Myers v. Derwinski,* 1 Vet.App. 127, 129 (1991), the Court noted that it is a veteran's statements on the VA Form 1–9 ("Appeal to Board of Veterans Appeals") that often frames the issues that must be considered by the Board. *EF,* 1 Vet.App. at 326. In *Myers,* the Court held that the BVA is required to review all issues which are reasonably raised from a liberal reading of the VA Form 1–9. *Myers,* 1 Vet.App. at 130.

In its decision, the BVA noted that the 1956 Reserve quadrennial examination revealed that appellant's hearing achieved a score of 15/15 feet on a spoken voice hearing test. This examination was performed one year after appellant's private audiological examination in 1955 indicated appellant suffered from a marked hearing loss. On his VA Form 1–9, appellant states that the 1956 examination could "in no way" be correct in view of the 1955 audiological findings of appellant's physician. The BVA has neither acknowledged this argument made by appellant nor expressed why it found the 1956 spoken voice examination to be preferable to or more credible than the 1955 audiological examination. The BVA cannot rely only upon the evidence it considers to be favorable to its position, but must review and base its decision upon *all* the evidence of record. 38 U.S.C. § 7104; *Willis v. Derwinski,* 1 Vet.App. 63, 66 (1991) (case remanded for BVA to provide "reasons or bases" for apparent dismissal of evidence of record favorable to veteran).

It is the holding of this Court that the BVA erred in failing to apply 38 U.S.C. § 1154 and 38 C.F.R. § 3.304(d) in the determination of this case. The decision of the BVA is VACATED and the case is REMANDED to the Board with the specific direction that it readjudicate the case and apply 38 U.S.C. § 1154 and 38 C.F.R. § 3.304(d). The BVA is to specifically include the lay evidence of appellant in its determination of service connection pursuant to § 1154 and 38 C.F.R. § 3.304(d); it must consider all the evidence of record in rendering its decision, and must provide the reasons or bases for its decision. 38 U.S.C. § 7104; *Gilbert v. Derwinski,* 1 Vet.App. 49 (1990).