**Eleanor M. HESSE, Appellant,**

v.

**Edward J. DERWINSKI, Secretary of Veterans Affairs, Appellee.**

**No. 90–763.**

United States Court of Veterans Appeals.

Submitted Feb. 21, 1992.

Decided April 22, 1992.

Eleanor M. Hesse, pro se.

James A. Endicott, Jr., Gen. Counsel, Barry M. Tapp, Asst. Gen. Counsel, Andrew J. Mullen, Deputy Asst. Gen. Counsel, and Carolyn F. Washington, Washington, D.C., were on the pleadings for appellee.

Before KRAMER, MANKIN, and IVERS, Associate Judges.

MANKIN, Associate Judge:

Before his death, Burt L. Hesse initiated this appeal of an April 17, 1990, Board of Veterans' Appeals (BVA or Board) decision that denied him service connection for his chronic obstructive pulmonary disease (COPD). *Burt L. Hesse*, BVA 90–13896 (Apr. 17, 1990). The veteran died while his appeal was pending in this Court, and his widow, Eleanor M. Hesse, was substituted as appellant. Upon review, we find that the BVA, in denying the veteran's claim, failed to comply with the requirement of 38 U.S.C. § 7104(d) (formerly § 4004(d)) that its decision provide an adequate statement of reasons or bases for its findings and conclusions. We therefore vacate the Board decision, retain jurisdiction, and remand the case to the Board for further adjudication. *See Gilbert v. Derwinski*, 1 Vet.App. 49 (1990).

## I. BACKGROUND

Burt L. Hesse served in the Army Air Corps from September 1942 to September 1945. Most of his service medical records were destroyed in the 1973 fire at the National Personnel Records Center in St.

Louis; however, it is known that while in service, his name appeared on various daily sick call reports, and that in 1944, he was hospitalized for pneumonia. From 1956 to 1965, the veteran's private physician (apparently, Dr. du Roy) recorded medical notes indicating that Hesse suffered from various ailments, including upper respiratory infection. R. at 36–38. Reports of X-rays taken in 1975 noted "poor inspiratory effort," "poorly defined" cardiac diameter, "parenchymal fibrosis" (fibrous degeneration of tissue), and other indications of cardiopulmonary disease. R. at 44–46.

In February 1976, Hesse filed a claim for compensation or pension. In support of his claim, he submitted the statement of Dr. Eframo, another private physician, who said that he had been treating Hesse since January 1971 for hypertension and for a cardiac and pulmonary disorder. R. at 43. The report of an April 1976 X-ray examination noted "passive congestive changes of the lower lung fields." R. at 49. In July 1976, Dr. Eframo, in a handwritten medical report, stated that Hesse's respiratory problem was first noted while he was in service, and was related to exposure to mustard gas. R. at 54. In December 1976, Hesse reported for a Veterans' Administration (now the Department of Veterans Affairs) (VA) examination. The VA physician recorded several diagnoses, including "severe obstructive lung disease," R. at 65–66, also noted elsewhere as COPD. R. at 73.

In a February 1977 rating decision, the VA denied service connection for the veteran's COPD, but awarded him a non-service-connected disability pension. Subsequently, the veteran submitted new evidence, including a statement from Dr. Prouet, also a private physician, who asserted that he had treated Hesse in 1946 for "numerous severe recurrent respiratory infections," including pneumonia. R. at 78. Nevertheless, in November 1977, the BVA found that the veteran's COPD "was not incurred in or aggravated by service." R. at 83. In its decision, the Board relied in part on various notations in the veteran's post-service medical records indicating that his lungs were "clear," which in the Board's view demonstrated that Hesse's COPD was unrelated to his treatment for a lung disorder while in service. R. at 82.

Dissatisfied with the denial of his claim for compensation, Hesse submitted yet further medical evidence, including letters from Dr. Eframo and Dr. du Roy. Both doctors asserted that, even if their notes may have indicated that they found the veteran's lungs to be "clear" on particular occasions, such findings should not be interpreted to preclude the presence of disease. R. at 84–87. Dr. du Roy stated that he could "hardly remember a time" when the veteran was not wheezing, short of breath, or suffering from some manifestation of pulmonary disease. R. at 86. Two VA rating boards characterized this and additional evidence as "cumulative and repetitious" and again denied the claim in February 1978 and July 1979. R. at 89, 92. Hesse then submitted two "buddy letters" from veterans who attested to their recollection that Hesse had suffered from lung problems in service. The VA considered these letters insufficient, however, to warrant a favorable decision, and again denied the veteran's claim in September 1979. From 1980 to 1982, the case came before the BVA three more times, the last of these on reconsideration by an expanded section of the Board; each adjudication resulted in denial of Hesse's claim.

In 1983, the case took a new turn when Hesse submitted what was purported to be a partial copy of a 1945 VA Form P–80a notifying him that he had been awarded a 10% disability rating for a lung condition. R. at 129–30. According to Hesse, the award notice turned up when his brother was going through their late father's personal effects. Hesse asserted that he had moved frequently following his separation from service, and that he had never received a disability payment under the 1945 award letter.

Despite this evidence, in December 1983, a rating board again denied the veteran's reopened claim. Although the BVA did not dispute the authenticity of the Form P–80a, it denied the veteran's claim in May 1985 and, on reconsideration, again in August 1985. Hesse subsequently attempted to re-

open his claim once again on the basis of new and material evidence, but apparently was able to muster no new evidence of significance. In August 1987, the BVA found the veteran's newly submitted evidence to be "cumulative and repetitious of prior considered evidence," R. at 160, and again denied his claim.

In 1988, Hesse requested the VA's assistance in obtaining additional service records in a renewed attempt to reopen his claim. The result was a one-page computer printout generated from "Hospital Admission Card data files (1942–1945; 1950–1954), created by the Office of the Surgeon General Department of the Army," that referred to information concerning his military service and treatment for pneumonia. R. at 164. This printout contained the unexplained notation "80% residue." The rating board found that the Hospital Admission Card data did not constitute new and material evidence, and again denied the claim in November 1988. In response, the veteran submitted a lengthy sworn statement describing the hardships of his wartime service along with a history of his military unit. In his statement, he offered the following interpretation of the phrase "80% residue":

> Residue—The remainder of something after a part is removed—medically this simply states that the hospital records acknowledged that the cure or medication was only 20% effective and the 80% was the residue and or residual remaining upon discharge from the hospital.

R. at 171. He also submitted copies of daily sick reports that, without exception, were duplicates of those submitted earlier, and a news article concerning the VA's discovery of additional military medical records.

In August 1989, the Regional Office at Phoenix, Arizona, once again confirmed the denial of service connection for Hesse's COPD. In testimony a few days later at a regional office personal hearing, Hesse could not recall any details concerning his 1945 disability claim. The hearing officer denied his claim, and Hesse took his case to the BVA once more.

In April 1990, the BVA issued a decision in which it denied the claim. The Board did not expressly state that it did not find the newly submitted evidence new and material; however, it stated that facts "previously established," i.e., the daily sick call reports, and other evidence, i.e., Hesse's testimony and the history of his military unit, "do not serve to establish" service connection for the claim. *Hesse*, BVA 90–13896, at 4. A timely appeal to this Court followed.

## II. ANALYSIS

Upon review, we are first and foremost struck by the observation that during the veteran's lifetime, he was apparently awarded a 10% disability rating for a lung condition; yet, he never received any compensation under that rating, nor does the record suggest that the award was rescinded or the rating reduced. The record clearly indicates that the veteran, once having learned of the 1945 rating (which the BVA has not disputed was actually awarded), took all reasonable steps within his power to further document its authenticity and to claim any benefits to which it may have entitled him. In each of its decisions since 1985, *including the decision before us in this appeal*, the Board failed to discuss the question of whether the veteran was entitled to benefits under an existing rating. Upon remand, the Board must examine this question and adequately explain either 1) why the veteran was or was not entitled to benefits under the 1945 award, or 2) why the issue was not properly before the Board in its April 17, 1990, decision.

Further, in its discussion of the Surgeon General's Hospital Admission Card data, the Board failed to respond adequately to the veteran's argument concerning proper interpretation of the phrase "80% residue." *See* R. at 164, 171. Because the Board did not address this question, there is nothing in the record before us to indicate whether the veteran's interpretation was correct or not. If his interpretation was correct, the Hospital Admission Card data might well be considered "new and material" evidence

that would require reopening of his previously disallowed claim "in light of *all* the evidence, both new and old." *Manio v. Derwinski*, 1 Vet.App. 140, 145 (1991); *see also* 38 U.S.C. § 5108 (formerly § 3008). The BVA may not disregard the issues a veteran raises in his appeal. *See Smith v. Derwinski*, 2 Vet.App. 137, 141 (1992). Consequently, upon remand the Board must adequately explain (perhaps with the aid of an interpretive key) the significance of the Hospital Admission Card data, as well as the Board's conclusion on the question of whether those data constitute new and material evidence. If the Board concludes that the evidence is new and material, it must reopen what is now appellant's claim for service connection for her deceased husband's COPD.

### III. CONCLUSION

The BVA's decision of April 17, 1990, is VACATED, and the case is REMANDED to the Board for further proceedings consistent with this opinion. The Court retains jurisdiction and directs that, upon completion of the remand proceeding, the Secretary shall file with the Clerk and serve upon appellant a copy of the Board's decision. Within 14 days after such filing, appellant shall notify the Clerk whether she desires to seek further review by the Court.

*It is so Ordered.*