Daniel G. CHIPEGO, Appellant,

v.

Jesse BROWN, Secretary of Veterans Affairs, Appellee.

No. 90–639.

United States Court of Veterans Appeals.

Jan. 25, 1993.

Daniel G. Chipego, pro se.

Robert E. Coy, Acting Gen. Counsel, Barry M. Tapp, Asst. Gen. Counsel, Pamela L. Wood, Deputy Asst. Gen. Counsel, and Craig M. Kabatchnick, were on the pleadings, for appellee.

Before NEBEKER, Chief Judge, and HOLDAWAY and IVERS, Associate Judges.

IVERS, Associate Judge:

Appellant, Daniel G. Chipego, appeals from an April 6, 1990, Board of Veterans' Appeals (BVA or Board) decision which denied entitlement to service connection for appellant's back disorder. On June 24, 1991, appellant filed an informal brief. Appellant contends that the BVA decision is clearly erroneous. On August 28, 1991, the Secretary of Veterans Affairs (Secretary) filed a motion for summary affirmance, for acceptance of the motion in lieu of a brief, and for a stay of proceedings pending a ruling on the motion. For the reasons set forth below, the Secretary's motion for summary affirmance is denied, and the BVA decision is vacated and remanded for further proceedings consistent with this opinion.

I. BACKGROUND

Appellant served in the United States Army from April 2, 1941, until September 3, 1945. From the record, it appears that appellant first injured his back in a parachute jump on October 19, 1943. R. at 11. This occurred at parachute school, while appellant was stationed at Fort Benning, Georgia. R. at 17, 64. Then, according to appellant, he re-injured his back on June 29, 1944, while stationed at Camp Forrest, Tennessee. There, he strained his back when he attempted to pick up the tail of a 75mm gun. The gun was too heavy to lift, and he dropped the tail of the gun on his toes. R. at 14, 150–52. Appellant contends that his back was re-aggravated during a practice parachute jump in Swindon, Eng-

land, in late summer, or early fall 1944, and again when he made a parachute jump over the Rhine River in March 1945. R. at 92, 145–46. Appellant claims that he made approximately 13 to 14 parachute jumps during his military career. *Id.* In addition to his back injury, appellant injured his right thumb and suffered from frozen feet while in Belgium in 1944. R. at 17.

It appears that appellant is service-connected for residuals of his right thumb injury and for his frozen feet. No reference will be made to medical documents found in the record that relate solely to these disorders.

Appellant probably filed his initial claim with the Veterans' Administration (now Department of Veterans Affairs) (VA) sometime in 1951. Appellant's claim for service connection for a back disorder was initially denied in a May 1951 rating decision. R. at 101. Appellant underwent a VA examination on January 2, 1952. R. at 17–21. Appellant was diagnosed with having "[r]esiduals back injury—subjective complaints only." R. at 20. However, from the record, it does not appear that X rays were taken. The earliest back X ray found in the record was an X ray of appellant's lumbar spine taken on March 8, 1974. The March 12, 1974, X-ray report stated, "Examination of the lumbar vertebrae shows early hypertrophic arthritic changes with narrowing of the lumbosacral joint." R. at 65. On June 11, 1979, Dr. W.H. Lambert filed an Attending Physician's Report with the VA. Dr. Lambert stated that he treated appellant "off and on" from 1947 to June 1979. R. at 66. In giving a history of appellant's back condition, Dr. Lambert stated that appellant injured his back in 1943, while in the U.S. Army at Fort Benning, Georgia, but then fell at work in 1972. *Id.* Dr. Lambert diagnosed appellant as having hypertrophic arthritis of the lumbar spine and stated that the "[h]ypertrophic arthritis of [appellant's] spine [was] caused by [the] trauma [of] 1972 [to] 1973." *Id.*

On August 23, 1979, appellant attempted to reopen his claim for service connection for his back injury. He submitted a "buddy letter," dated April 30, 1980, which attested to a parachute jump in England. R. at 69–70. Statements from appellant's wife and Dr. Lambert were received by the VA in September 1981. R. at 72–75. On October 22, 1981, the VA received a report by Dr. Lambert which traced the history of appellant's back disability back to 1945, soon after appellant's discharge. Dr. Lambert stated that he had begun treating appellant in early 1946 and had continued to do so to the present. R. at 77.

On April 19, 1982, the BVA denied service connection for a back disorder, including spinal arthritis. R. at 79–84. Affidavits by two members of appellant's Army unit were submitted to the VA, attesting to parachute jumps made by appellant. Additionally, a letter from Dr. Charles J. Aquilina was submitted wherein Dr. Aquilina concluded that appellant's current back condition was related to the parachute accidents he suffered during service. R. at 86–90. On April 12, 1983, Dr. Lewis L. Rogers, after reviewing a number of appellant's records, sent a letter to the VA Regional Office expressing his belief "that the narrowing of the L–5 S–1 disc is the major problem here and it probably is associated with [appellant's two] injuries [suffered in service] ... The arthritic changes of course have occured [sic] from that injury to the present date." R. at 94. Letters from an Army surgical technician and an Army battalion surgeon regarding the practice jump in Swindon, England, were submitted to the VA in April 1984. On October 16, 1985, the BVA again denied service connection for appellant's back disorder. R. at 100–06.

Appellant reopened his claim in 1986. A report by Dr. Vincent J. Digiovanni was submitted. R. at 107–09. Dr. Digiovanni diagnosed appellant as having "[s]pondylosis of the lumbar spine, probably secondary to recurrent trauma from military trauma." R. at 109. A June 15, 1988, BVA decision denied service connection for appellant's back disability on the grounds that the evidence received in support of the veteran's claim did not provide a new factual basis warranting service connection. R. at 111–17.

On July 12, 1988, appellant attempted to reopen his back claim. He filed a statement in support of claim and requested a personal hearing; he further requested the VA to research any available records from the National Research Council. R. at 118. On October 27, 1988, a one-page computer printout generated from "Hospital Admission Card data files (1942–1945; 1950–1954), created by the Office of the Surgeon General Department of the Army," was sent from the Office of the Surgeon General (SGO) to the VA. R. at 121. Appellant also submitted a statement from Dr. Earnest B. Carpenter, who treated appellant after he injured himself in the 1944 jump in England. Dr. Carpenter stated the following:

> As a Battalion Surgeon with the 17th Airborne Division, Headquarters Division: I distinctly remember treating [appellant] following a practice jump in England in the late Summer or early Fall. He injured his back and I sent him to the nearest U.S. Army hospital. [Appellant] later returned to the 17th A[irborne] division but continued to have complaints with his back.

R. at 124. On January 30, 1989, the rating board, in a deferred or confirmed rating decision, determined that the evidence submitted was not new and material evidence. R. at 126. A Notice of Disagreement was recorded on February 24, 1989. R. at 128. On February 24, 1989, a Statement of the Case was sent to appellant. R. at 135–38. A hearing took place on April 26, 1989. R. at 142–55. On May 12, 1989, the hearing officer found that the testimony and the evidence submitted, including the SGO report, did "not relate [appellant's] current back condition to his military service." R. at 156. On April 6, 1990, the BVA upheld the denial for service connection. Appellant made a timely appeal to this Court. This Court has jurisdiction to hear this case under 38 U.S.C. § 7252 (formerly § 4052).

## II. ANALYSIS

■ To open a previously disallowed claim, appellant must submit new and material evidence. 38 U.S.C. § 5108 (formerly § 3008). In determining whether to reopen

a claim, the Board must first determine whether the evidence submitted is "new and material," and second, evaluate the merits of appellant's claim in light of all of the evidence both new and old. *Manio v. Derwinski*, 1 Vet.App. 140, 145 (1991). "Material evidence" is evidence which "is relevant and probative of the issue at hand," which gives rise to "a reasonable possibility that the new evidence, when viewed in the context of all the evidence, both new and old, would change the outcome." *Colvin v. Derwinski*, 1 Vet.App. 171, 174 (1991); *see also Villalobos v. Principi*, 3 Vet.App. 450, 452, (1992) (" 'New and material' evidence is evidence which is not cumulative of previously submitted evidence and which, 'when viewed in the context of all the evidence, both old and new, would change the outcome.' ") (quoting *Colvin*, 1 Vet.App. at 174). The determination whether evidence submitted to reopen a previously disallowed claim is new and material under 38 U.S.C. § 5108 is a question of law which this Court reviews de novo. *Colvin*, 1 Vet.App. at 174.

■ Appellant has submitted several items of evidence: a treating physician's statement (that of Dr. Carpenter, the Battalion Surgeon), a cryptic SGO readout, and appellant's hearing testimony. It appears from the BVA decision that the Board examined the new evidence alone rather than "in the context of all the evidence" (*Colvin*, 1 Vet.App. at 174) and concluded "that the evidence submitted in support of this appeal does not present new facts to support an allowance in this claim." *Daniel G. Chipego*, BVA 90–08356, at 6 (Apr. 6, 1990). In this regard, the Court recognizes that, at the time the Board made its April 6, 1990, decision, neither *Manio* nor *Colvin* was available for the Board to use as guidance. In light of these decisions, the Court holds, as a matter of law, that the evidence submitted by appellant is new and material, and therefore the case must be remanded to the Board for reopening and adjudication on the merits.

In holding that the evidence is new and material, the Court notes that, with regard to the doctor's statement and appellant's

sworn testimony, if this evidence is believed, it presents a reasonable possibility of changing the outcome of the claim. As the Court recently observed,

> There is sometimes confusion in determining the *ultimate* credibility or weight to be accorded evidence, both questions of fact, and the issue of whether the evidence is new and material, a question of law. In determining the latter, the credibility of the evidence is to be presumed. This presumption is made *only for the purpose of determining whether the case should be reopened.* Once the evidence is found to be new and material and the case is reopened, the presumption that it is credible and entitled to full weight no longer applies. In the adjudication that follows the reopening, the Board having accepted provisionally for reopening purposes the credibility of the new evidence, then must determine, as a question of fact, both the weight and credibility of the new evidence in the context of all the evidence, new and old.

*Justus v. Principi*, 3 Vet.App. 510, 513 (1992).

With regard to the SGO card, the Court notes that no interpretation was provided in the BVA opinion. Instead, the Board simply commented:

> The abstract from the [O]ffice of the Surgeon General indicates only that the veteran suffered a crushing injury for which he was hospitalized in 1944. It does not indicate the naturare [sic] and extent of the injury the injury [sic] and, as such, does not establish the presence of a chronic backs [sic] disorder in service.

*Daniel G. Chipego*, BVA 90–08356, at 6. However, the SGO card contains several code numbers which are not explained, including a notation of "80% residue." Whether the SGO card is "new and material" evidence depends on whether the data on the card can be interpreted. *See Hesse v. Derwinski*, 2 Vet.App. 359, 361–62 (1992) (remanded in part for the Board to "adequately explain (perhaps with the aid of an interpretive key) the significance of the Hospital Admission Card data, as well as

the Board's conclusion on the question of whether those data constitute new and material evidence"). The Board must provide a clear statement of reasons or bases for its dismissal of this evidence.

 Further, the Board, upon remand, should take into consideration 38 U.S.C. § 1154(b) (formerly § 354(b)), which states:

> In the case of any veteran who engaged in combat with the enemy in active service with a military, naval, or air organization of the United States during a period of war, campaign, or expedition, the Secretary shall accept as sufficient proof of service-connection of any disease or injury alleged to have been incurred in or aggravated by such service satisfactory lay or other evidence of service incurrence or aggravation of such injury or disease, if consistent with the circumstances, conditions, or hardships of such service, notwithstanding the fact that there is no official record of such incurrence or aggravation in such service, and, to that end, shall resolve every reasonable doubt in favor of the veteran. Service-connection of such injury or disease may be rebutted by clear and convincing evidence to the contrary. The reasons for granting or denying service-connection in each case shall be recorded in full.

*See also* 38 C.F.R. 3.304(d) (1991) (the regulation is substantively identical). This may or may not be applicable. Most of appellant's injuries to his back occurred during training jumps; however, he does allege that one of his mishaps occurred in Germany. A veteran may establish a claim of service connection for a combat-related injury on the basis of sworn statements alone, and he does not need to supply objective medical evidence to support the claim. *See Sheets v. Derwinski*, 2 Vet.App. 512, 515, (1992); *Smith v. Derwinski*, 2 Vet. App. 137, 140 (1992).

In its decision, the BVA did not comment on appellant's sworn testimony. The Board is required to make findings regarding credibility and to provide reasons or bases for those findings. *See Smith v. Derwinski*, 1 Vet.App. 235, 237–38 (1991)

(remanded in part for the Board to provide reasons or bases for its assessment of appellant's testimony). If believed, appellant has established how his back was originally injured and how it was re-injured during the time he was in service. The Board must consider this evidence upon reopening in the context of all the evidence, old and new, including Dr. Carpenter's statement which, if credible, may serve to corroborate part of appellant's statements.

### III. CONCLUSION

On consideration of the foregoing, the Secretary's motion for summary affirmance is DENIED. The BVA decision is VACATED and REMANDED for readjudication consistent with this opinion. The Board shall issue a new decision consistent with this opinion and supported by an adequate statement of reasons or bases. *See* 38 U.S.C. § 7104(a) (formerly § 4004(a)); *Fletcher v. Derwinski*, 1 Vet.App. 394, 397 (1991).