**Medaldo VELEZ, Appellant,**

v.

**Togo D. WEST, Jr., Acting Secretary of Veterans Affairs, Appellee.**

No. 96–47.

United States Court of Veterans Appeals.

March 25, 1998.

Michael D. Mitchell, Warwick, RI, on the brief for appellant.

Mary Lou Keener, General Counsel; Ron Garvin, Assistant General Counsel; Carolyn F. Washington, Deputy Assistant General Counsel; and Michael R. Smalls, Washington, DC, on the brief for appellee.

Before KRAMER, IVERS, and STEINBERG, Judges.

STEINBERG, Judge:

The appellant, World War II combat veteran Medaldo Velez, appeals through counsel an October 31, 1995, decision of the Board of Veterans' Appeals (Board or BVA) denying service connection for a chronic gastrointestinal disability. Record (R.) at 9, 16. Both parties have filed briefs. This appeal is timely, and the Court has jurisdiction pursuant to 38 U.S.C. §§ 7252(a) and 7266(a). For the reasons that follow, the Court will affirm the decision of the Board.

### I. Facts and Procedural History

The appellant, a combat veteran who was awarded the Purple Heart for wounds received in action in August 1944, served on active duty in the U.S. Army from February 1941 to June 1945. R. at 22, 78. The report of his medical examination at induction does not reflect any gastrointestinal disability. R. at 19–20. Undated service medical records, apparently from early June 1945, report complaints related to shrapnel wounds to his right upper extremity incurred in August 1944 and "anorexia" and weight loss. R. at 24–25. A physical examination dated May 31, 1945, noted: "ABDOMEN: negative", "HERNIA: none", "GENITO-URINARY: apparently normal", and "ANUS AND RECTUM: apparently normal". R. at 29. He was certified for discharge as a result of his shrapnel wounds, but that certificate records no diagnosis related to a gastrointestinal disorder. R. at 32–33.

In June 1945, the veteran filed with a Veterans' Administration (now Department of Veterans Affairs) (VA) regional office (RO) an application for VA service-connected disability compensation or non-service-connected pension, claiming a shrapnel-related shoulder injury and "stomach trouble". See R. at 59. A July 1945 VARO decision granted a 50% disability rating for a right-shoulder injury as a result of the shrapnel wound, but that decision "deferred" a rating for stomach trouble pending the completion of a VA medical examination. R. at 60. Subsequent VA examinations in 1946, 1947, and 1949 recorded no diagnoses of a gastrointestinal condition (see R. at 62–70, 117–26) but did note complaints of nausea and lack of appetite (R. at 65) and "stomach trouble" (R. at 66–67, 117–18). Private medical records dated between 1955 and 1963 reflect treatment for hemorrhoids, an urethral block, and an anal fissure characterized by rectal bleeding. R. at 129–31, 139–52. The veteran underwent a right inguinal herniorrhaphy in March 1966; the reported history was that he had a three-year history of abdominal pain, suggestive of urological disease, for which he had been seen and evaluated by two urologists. R. at 158–62. In a letter dated in June 1980, a private physician, Dr. Narverud, reported that the veteran had a hiatal hernia and symptoms of esophageal reflux (R. at 165), and private medical records reflected diagnoses of gastroesophageal reflux in 1986 and 1987 (R. at 168–71).

In September 1989, the veteran made a request to "reopen" his claim for a right-shoulder disability, apparently a claim for an increased rating for that condition, and stated that he believed that he was service connected for a stomach disability but that he was unsure because he had not received a letter subsequent to an examination in July 1945. R. at 182. A November 1989 RO decision noted: "Advise vet[eran] that he is not S[ervice] C[onnected] for stomach disability". R. at 186. In November 1989, the veteran (1) once again requested information from VA on whether he was service connected for stomach problems; (2) stated that while in the service tubes were run from his mouth into his stomach area; (3) and conceded that although he had had stomach problems for years after he left the service, he did not consult a doctor until the early 1960s. R. at 188. In December 1989, VA notified the veteran that service connection for a stomach disability had not been estab-

lished. R. at 200. In a June 1990 letter, he filed a Notice of Disagreement (NOD) and requested a copy of the decision denying his claim for a stomach disability. R. at 202. VA then issued an October 1990 Statement of the Case (SOC), which noted that the veteran had never been informed that his 1945 claim for a stomach disability had been denied. R. at 206. In April 1993, after reviewing the appellant's claim de novo, the Board denied service connection for a gastrointestinal condition. R. at 241–46. In March 1994, the Court—finding insufficient the Board's statement of reasons or bases pursuant to 38 U.S.C. § 7104(d)(1)—vacated the Board's April 1993 decision and remanded the matter "for the Board to seek to obtain the records expressly sought by the appellant or to explain why it has not done so". R. at 249–50.

On remand, the veteran submitted lay statements from his wife and a friend. His wife noted that she had been aware of his "chronic digestive problems" since she met him in 1950 and that he had related that he had had no problems prior to service, and his friend noted that the veteran had complained of a "continued stomach disorder" when she knew him in 1949. R. at 252–54. In a statement submitted in April 1994, the veteran asserted that his stomach/bowel condition may have been misdiagnosed and that the same symptoms had continued since service. R. at 258. In August 1994, the Board remanded the veteran's claim to the RO for further development and clarification. R. at 267–71. In a September 1994 statement, the veteran asserted that he felt that all gastrointestinal or digestive disabilities (including hiatal hernia with esophageal reflux, hemorrhoids, and diverticulae) should be service connected. R. at 275. In that same response, he stated that he had received treatment from Kaiser Permanente for his stomach problems since the early 1950s and attempted to recall treatment received at military facilities and their respective dates. R. at 275–77. The RO sought additional private and VA medical records (*see* R. at 284–85, 286, 288–92, 294; *see also* R. at 316–17), but the only relevant evidence in the record on appeal (ROA) stemming from those attempts was a summary of data on hospital admission cards compiled by the Army Surgeon General that references the right-shoulder injury (R. at 292). In July 1995, the RO confirmed its prior denial of service connection for "all" chronic gastrointestinal disorders, specifically including a hiatal hernia with gastroesophageal reflux, diverticulisi/diverticulitis, and hemorrhoids. R. at 302–04.

In August 1995, the RO requested an opinion from a "qualified [VA] medical examiner" to determine if any of the gastrointestinal and digestive disabilities (including hiatal hernia with esophageal reflux, hemorrhoids, and diverticulosis) were medically related to the stomach problem first claimed in 1945. R. at 324. In an August 1995 response to the RO's question, Dr. Hallstone asserted that a careful evaluation of all the medical records in the claims file showed no in-service documentation of any of these conditions and that there was no objective evidence that a hiatal hernia, hemorrhoids, or diverticulosis had occurred in service. R. at 326–27. An August 1995 RO decision, relying in part upon Dr. Hallstone's report, again confirmed its prior denial (R. at 329–31), and the RO issued a Supplemental SOC (SSOC) that referred to that report (R. at 334–36).

In the October 31, 1995, BVA decision here on appeal, the Board made the following findings of fact: (1) All relevant evidence necessary had been obtained; (2) the veteran was a combat veteran; (3) a chronic gastrointestinal disability was not present during his service; (4) a gastrointestinal disability, characterized as esophageal reflux, was first medically demonstrated many years after discharge; (5) a peptic or gastric ulcer had not been medically demonstrated and any current gastrointestinal disorder that the veteran may have was not related to service or any other incident thereof; and (6) this case does not present a question of medical complexity or controversy such as to warrant obtaining an opinion from an independent medical expert. R. at 10. The Board concluded that a chronic gastrointestinal disability was not incurred in or aggravated by service and that an ulcer may not be presumed to have been incurred in service. *Ibid.*

On appeal to this Court, the appellant, on August 27, 1997, filed a motion for expedited review of his appeal. On September 25, 1997, the Court denied that motion. *Velez v. Gober*, 10 Vet.App. 432 (1997) (per curiam order). The Court notes that it may not consider and has not considered documents that the appellant attached as appendices to his brief that were not included in the record before the Board. *Brock v. Brown*, 10 Vet.App. 155, 159 (1997); *see also* 38 U.S.C. § 7252(b) ("[r]eview in the Court shall be on the record of proceedings before the Secretary and the Board"); *Rogozinski v. Derwinski*, 1 Vet.App. 19, 20 (1990).

## II. Analysis

On appeal, the appellant raises the following three arguments: (1) The Board failed to apply properly 38 U.S.C. § 1154(b), which lessens the evidentiary burden on combat veterans applying for service connection; (2) VA violated a "fair process principle", under *Thurber v. Brown*, 5 Vet.App. 119 (1993), and *Austin v. Brown*, 6 Vet.App. 547 (1994), because it impermissibly implied that, on remand, the veteran was limited to submitting only additional argument and comment, and did not inform him of his right to submit additional evidence, or of the report by Dr. Hallstone; and (3) the Board failed to consider whether the veteran's claim for service connection for a gastrointestinal disorder included a claim for secondary service connection. The Court will consider each issue in turn.

### A. Service Connection and 38 U.S.C. § 1154(b)

Service connection for VA disability compensation purposes will be awarded to a veteran who served on active duty during a period of war, or during a post-1946 peacetime period, for any disease or injury that was incurred in or aggravated by a veteran's active service or for certain diseases that were initially manifested, generally to a degree of 10% or more, within a specified presumption period after separation from service. *See, e.g.,* 38 U.S.C. §§ 1110, 1112(a), 1116, 1131, 1133(a), 1137; 38 C.F.R. §§ 3.303(a), 3.306, 3.307 (1997). When a disease is first diagnosed after service, service connection may nevertheless be established by evidence demonstrating that the disease was in fact "incurred" during the veteran's service, or by evidence that a presumption period applied. *See Combee v. Brown*, 34 F.3d 1039, 1042 (Fed.Cir.1994) ("[p]roof of direct service connection ... entails proof that exposure during service caused the malady that appears many years later"); *Cosman v. Principi*, 3 Vet.App. 503, 505 (1992) ("even though a veteran may not have had a particular condition diagnosed in service, or for many years afterwards, service connection can still be established"). A service-connection claim must be accompanied by evidence that establishes that the claimant currently has the claimed disability. *See Brammer v. Derwinski*, 3 Vet.App. 223, 225 (1992) (absent "proof of a present disability there can be no valid claim"); *see also Rabideau v. Derwinski*, 2 Vet.App. 141, 144 (1992).

Section 5107(a) of title 38, U.S.Code, provides in pertinent part: "[A] person who submits a claim for benefits under a law administered by the Secretary shall have the burden of submitting evidence sufficient to justify a belief by a fair and impartial individual that the claim is well grounded." The Court has defined a well-grounded claim as follows: "[A] plausible claim, one which is meritorious on its own or capable of substantiation. Such a claim need not be conclusive but only possible to satisfy the initial burden of [section 5107(a)]." *Murphy v. Derwinski*, 1 Vet.App. 78, 81 (1990). A well-grounded service-connection claim generally requires (1) medical evidence of a current disability; (2) medical or, in certain circumstances, lay evidence of in-service incurrence or aggravation of a disease or injury; and (3) medical evidence of a nexus between the asserted in-service injury or disease and a current disability. *See Caluza v. Brown*, 7 Vet.App. 498, 506 (1995), *aff'd per curiam*, 78 F.3d 604 (Fed.Cir.1996) (table); *see also Epps v. Gober*, 126 F.3d 1464, 1468 (Fed.Cir.1997) (expressly adopting definition of well-grounded claim set forth in *Caluza, supra*), *cert. denied*, —— U.S. ——, 118 S.Ct. 2348, 141 L.Ed.2d 718 (1998); *Heuer v. Brown*, 7 Vet.

App. 379, 384 (1995) (citing *Grottveit v. Brown,* 5 Vet.App. 91, 93 (1993)); *Brammer, supra.* A Board determination whether a claim is well grounded is subject to de novo review by the Court under 38 U.S.C. § 7261(a)(1). *See Grivois v. Brown,* 6 Vet. App. 136, 139 (1994); *Grottveit, supra.*

■ Of particular pertinence to this case, 38 U.S.C. § 1154(b), by relaxing the evidentiary requirements for adjudication of certain combat-related VA-disability-compensation claims, specifically allows combat veterans, in certain circumstances, to use lay evidence to establish service incurrence of a disease or injury—that is, what occurred in service— both as to the evidence that a claimant must submit in order to make such a claim well grounded and as to the evidence necessary in order for service connection of a disease or injury to be awarded. *See Caluza, supra; see also Jensen v. Brown,* 19 F.3d 1413, 1416–17 (Fed.Cir.1994); *Chipego v. Brown,* 4 Vet.App. 102, 105 (1993); *Sheets v. Derwinski,* 2 Vet.App. 512, 515 (1992); *Smith (Morgan) v. Derwinski,* 2 Vet.App. 137, 140 (1992). Section 1154(b) provides:

> In the case of any veteran who engaged in combat with the enemy in active service with a military, naval, or air organization of the United States during a period of war, campaign, or expedition, the Secretary shall accept as sufficient proof of service[ ]connection of any disease or injury alleged to have been incurred in or aggravated by such service satisfactory lay or other evidence of service incurrence or aggravation of such injury or disease, if consistent with the circumstances, conditions, or hardships of such service, notwithstanding the fact that there is no official record of such incurrence or aggravation in such service, and, to that end, shall resolve every reasonable doubt in favor of the veteran. Service[ ] connection of such injury or disease may be rebutted by clear and convincing evidence to the contrary. The reasons for granting or denying service[ ]connection in each case shall be recorded in full.

38 U.S.C. § 1154(b). The regulation implementing section 1154(b) is at 38 C.F.R. § 3.304(d) (1997).

In *Collette v. Brown,* the Court of Appeals for the Federal Circuit stated:

> [Section] 1154(b) sets forth a three-step, sequential analysis that must be undertaken when a combat veteran seeks benefits under the method of proof provided by the statute. As the first step, it must be determined whether the veteran has proffered "satisfactory lay or other evidence of service incurrence or aggravation of such injury or disease." 38 U.S.C. § 1154(b). As the second step, it must be determined whether the proffered evidence is "consistent with the circumstances, conditions, or hardships of such service." *Id.* The statute provides that if these two inquiries are met, the Secretary "shall accept" the veteran's evidence as "sufficient proof of service-connection," even if no official record of such incurrence exists....
>
> .... [A]s the third step of the analysis, it must be determined whether ... service[ ]connection [has been rebutted] by "clear and convincing evidence to the contrary."

*Collette,* 82 F.3d 389, 392–93 (Fed.Cir.1996). Subsequently, this Court, in *Libertine v. Brown,* concluded as follows regarding *Collette:*

> It is unclear whether in setting forth this analysis the Federal Circuit intended to alter the medical nexus requirement set forth in *Caluza* [7 Vet.App. at 507] (holding that section 1154(b) relates only to what happened in service ("what happened then") and does not excuse need for medical evidence of nexus to service, and that term "service connection" in that statute means "service incurrence or aggravation.") The Federal Circuit's silence regarding this issue, in the face of its positive affirmation of *Caluza* with respect to the meaning of "satisfactory" evidence ... and its holding, as *Caluza* had suggested, 7 Vet.App. at 510–12, that the weighing of contrary evidence cannot be considered under § 1154(b) as part of the first two steps but only as part of rebuttal of service incurrence under the clear-and-convincing evidence standard, can be fairly read as not affecting *Caluza*'s medical nexus analysis, a reading that the Court adopts.

*Libertine,* 9 Vet.App. 521, 524–25 (1996), *appeal dismissed for lack of jurisdiction,* 132 F.3d 50 (1997) (table). This *Libertine/Caluza* interpretation of section 1154(b) and the Federal Circuit's opinion in *Collette* has become deeply embedded in this Court's caselaw. *E.g., Turpen v. Gober,* 10 Vet.App. 536, 539 (1997) (holding that, absent medical-nexus evidence, there was "no reasonable possibility that consideration of § 1154(b) by the Board could change the outcome of the case on the merits"); *Brock,* 10 Vet.App. at 162 ("reduced evidentiary burden provided for combat veterans by 38 U.S.C. § 1154(b) relate[s] only to the question of service *incurrence,* 'that is, what happened then—not the · questions of either current disability or nexus to service, as to both of which competent medical evidence is generally required'" (quoting *Caluza,* 7 Vet.App. at 507)); *Cohen v. Brown,* 10 Vet.App. 128, 138 (1997) ("[s]ection 1154(b) provides a factual basis upon which a determination can be made that a particular disease or injury was incurred or aggravated in service but not a basis to link etiologically the condition in service to the current condition").

In the instant case, the appellant contends that the Board did not comply with the three-step process enunciated in *Collette* for evaluating claims under section 1154(b), and instead leapt directly to step three without determining whether the veteran had submitted satisfactory lay or other evidence consistent with the conditions, circumstances, and hardships of his service. The appellant is correct that the Board did not explicitly consider steps one and two as they were subsequently outlined by *Collette* but had already been set forth (more than six months earlier) by *Caluza,* 7 Vet.App. at 507. Instead, it stated:

> [T]he veteran is found to have engaged in combat during service so as to warrant consideration of the provisions set forth in · 38 U.S.C.[ ] § 1154.... While the veteran states that he, in fact, had a chronic gastrointestinal disability at that time, and

continues to have such a disorder, the Board finds that the evidence of record is clear and convincing against his claim. There are ample medical records in service and shortly thereafter showing no such disability was found, even though evaluations were performed and studies accomplished in an effort to detect such disorder.

R. at 16. It could well be that the first sentence of the above quotation was a *concession* by the Board that *Caluza* and *Collette* steps one and two had been satisfied and that the Board then moved to step three and concluded that there was clear and convincing evidence that the condition had not been incurred in service. As to the Court's review of the Board's application of the "clear and convincing" standard as part of step 3, *Caluza* suggested in dictum that the Court should apply the standard for reviewing a mixed question of law and fact—that is, whether the determination is "arbitrary and capricious"—a standard that is highly deferential to the Board. *See Caluza,* 7 Vet.App. at 509 (dictum); *see also* 38 U.S.C. § 7261(a)(3)(A) (Court shall set aside BVA conclusions "found to be ... arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law"); *Butts v. Brown,* 5 Vet.App. 532, 539 (1993) (en banc); *cf. id.* at 545–47 (Steinberg, J., concurring). However, the Court's decision in *Bagby v. Derwinski* might suggest that this is a question of law subject to nondeferential de novo review by the Court. *Bagby,* 1 Vet.App. 225, 227 (1991) (question whether, under 38 U.S.C. § 1111, there is sufficient evidence to rebut presumption of soundness upon entry into service is question of law subject to de novo review by Court). We need not here resolve the question of the applicable standard of review because the appellant cannot prevail under either standard.

First, the Court holds that, even applying de novo review under *Caluza/Collette* step three, there is clear and convincing evidence of nonincurrence during service so as to rebut *Caluza/Collette* steps one and

two. Second, in light of the Court's conclusion in *Libertine* and the absence of any medical evidence linking the "anorexia"—or any other gastrointestinal condition asserted by the appellant to have developed in service—to any of his present gastrointestinal conditions, *see Libertine*, 9 Vet.App. at 524–25, even if we were to assume an error in the Board's apparent concession that steps one and two of *Caluza/Collette* had been satisfied (without expressly discussing the evidence in terms of those two steps) so as to proceed to an analysis under step three of *Caluza/Collette*, such error would have been nonprejudicial to the appellant. Where an appellant has not been harmed by an error in a Board determination, the error is not prejudicial. *See* 38 U.S.C. § 7261(b) ("Court shall take due account of the rule of prejudicial error"); *Edenfield v. Brown*, 8 Vet.App. 384, 390–91 (1995) (en banc).

### B. "Fair Process" Issues

The appellant argues that, on remand, he was not informed of his right to respond to Dr. Hallstone's report or specifically to submit additional evidence in response thereto.

■ **1. Notice of Right to Respond to Dr. Hallstone's Report.** In *Thurber*, the Court held:

> [B]efore the BVA relies, in rendering a decision on a claim, on any evidence developed or obtained by it subsequent to the issuance of the most recent [SOC] or [SSOC] with respect to such claim, the BVA must provide a claimant with reasonable notice of such evidence and of the reliance proposed to be placed on it and a reasonable opportunity for the claimant to respond to it. If, in the course of developing or obtaining or attempting to so develop or obtain such evidence, the BVA becomes aware of any evidence favorable to the claimant, it shall provide the claimant with reasonable notice of and a reasonable opportunity to respond to the favorable evidence, and shall in its decision provide reasons or bases for its findings with respect to that evidence.

*Thurber*, 5 Vet.App. at 126. However, in the instant case, the BVA **did not rely on evidence obtained after the issuance of the** **most recent SSOC** in making its decision. After Dr. Hallstone's report was acquired and the August 1995 RO decision had relied upon it (R. at 329–30), the RO issued an SSOC referring to that report and inviting him to "make any comment [he] wish[ed] concerning the additional information" (R. at 333–36). The Court thus holds that a *Thurber* error was not implicated in the instant case. Furthermore, the notice supplied the veteran by the RO concerning VA's reliance on Dr. Hallstone's report comported with the requirements of law and regulation for SOCs and of regulation (the law does not recognize SSOCs expressly) for SSOCs, *see* 38 U.S.C. § 7105(d)(1)-(4); 38 C.F.R. §§ 19.30, 19.31, 19.37 (1997).

Even were the Court to conclude—which it expressly does not—that the notice of VA's reliance upon Dr. Hallstone's statement was somehow legally insufficient, the veteran explicitly stated, in an August 29, 1995, statement, that he wished "to waive the sixty-day waiting period for response" to the SSOC. R. at 338. Such a waiver would appear to cure any potential defect in the notice as to a right to respond. *See Allday v. Brown*, 7 Vet.App. 517, 533 (1995) (although usually, before Board could address issue first raised to it, Board would need to consider whether claimant had notice of need to submit evidence or argument on question, the "appellant could expressly waive such due-process rights to permit initial BVA adjudication"). Moreover, because the absence of medical-nexus evidence is determinative of the service-connection claim, *see* part II.A., above, and Dr. Hallstone's report is irrelevant as to that finding, any failure to notify would have been nonprejudicial error. *See* 38 U.S.C. § 7261(b); *see also Edenfield, supra* (holding that because appellant had failed to submit well-grounded claim, Board's failure to comply with *Thurber* was not prejudicial); *Dean v. Brown*, 8 Vet.App. 449, 456 (1995); *cf. Solomon v. Brown*, 6 Vet.App. 396, 401–02 (1994).

■ **2. Notice of Right to Submit Evidence in Response.** The appellant also objects more broadly to the alleged lack of "fair process" because VA's communications with him did not make plain that he was free to

submit additional evidence upon remand from this Court in 1994. The appellant is correct that no communication from VA subsequent to this Court's remand communicated any right to submit additional evidence. *See* R. at 307 (RO letter accompanying July 1995 SSOC and offering "opportunity to make any comment" and to "make a response"); R. at 333 (RO letter accompanying August 1995 SSOC offering "opportunity to make any comment"). The appellant is also correct that in *Austin* "the Court expanded on *Thurber* and expressly held that the 'response to which the claimant was entitled, as contemplated by *Thurber*, was not limited to argument or comment, but also included the claimant's right to submit additional evidence.' " *Arnesen v. Brown*, 8 Vet.App. 432, 440 (1995) (quoting *Austin*, 6 Vet.App. at 551); *see also Moffitt*, 10 Vet.App. at 225–26; *Smith (Bernard) v. Brown*, 10 Vet.App. 44, 46–48 (1996) (claimant's right to submit additional evidence in *Thurber/Austin* situation could not be limited to showing of good cause); *Sutton v. Brown*, 9 Vet.App. 553, 564 (1996); *Daniels v. Brown*, 9 Vet.App. 348, 352–53 (1996) (Board's requirement that claimant show "good cause" for presenting additional evidence held prejudicial error requiring remand where appellant could have used that opportunity to produce medical evidence showing that veteran was not intoxicated at time of in-service accident that caused his death).

However, this *Austin* right to submit additional evidence arises in a situation where the **Board** develops new evidence ***after*** the issuance of the most recent SOC or SSOC, a situation not present here. The Court can locate no general statutory or regulatory obligation applicable to the facts of this case—independent of the fair-process obligation recognized in *Austin* and *Thurber*, which is not here applicable—that would require VA to notify an individual claimant of a right to submit additional evidence. *See Bernard v. Brown*, 4 Vet.App. 384, 392–93 (1993) (providing inventory of procedural requirements); 38 U.S.C. § 5104(b) (mandatory notice after benefit is denied does not specify right for claimant to submit further evidence); 38 C.F.R. §§ 3.103(b)(1) (right to notice of decision, right to hearing, right to representa-

tion, and right to appeal); 3.103(d) (all evidence submitted by claimant to be included in record); 19.30(b) (information that must be furnished with SOC does not mention right to submit evidence); 19.31 (SSOC required when "additional pertinent evidence is received" after SOC or SSOC); 20.302(c) (claimant given 60 days to respond to SSOC and must file Substantive Appeal as to issues not covered in original SOC); 20.1304(a), (b), (c) (right under certain circumstances, or for good cause shown, to submit additional evidence after notice of certification of appeal to BVA) (1997); *see also* 38 C.F.R. §§ 19.25 (right to notice of appellate rights); 19.36 (right to notice of certification of appeal and transfer of records); 19.76 (right to notice of time and place of hearing before BVA) (1997); *cf. Robinette v. Brown*, 8 Vet.App. 69, 80 (1995) (relying upon 38 U.S.C. § 5103(a) statement that "[i]f a claimant's application for benefits under the laws administered by the Secretary is incomplete, the Secretary shall notify the claimant of the evidence necessary to complete the application"); 38 C.F.R. § 3.103(b)(2) (prior to termination or reduction of benefit, claimant entitled to notice of adverse action and of "period . . . in which to submit evidence"). As to the provisions of law and regulation that relate to the right to submit additional evidence under certain circumstances, a VA claimant is held to be on notice of those publicly stated requirements. As the Court held in *Morris (John) v. Derwinski:*

> The Supreme Court has held that everyone dealing with the Government is charged with knowledge of federal statutes and lawfully promulgated agency regulations. *Fed. Crop Ins. Corp. v. Merrill*, 332 U.S. 380, 384–85, 68 S.Ct. 1, 3–4, 92 L.Ed. 10 (1947). Thus, regulations are binding on all who seek to come within their sphere, "regardless of actual knowledge of what is in the [r]egulations or of the hardship resulting from innocent ignorance." *Id.* at 385, 68 S.Ct. at 3–4.

*Morris*, 1 Vet.App. 260, 265 (1991); *see also Jaquay v. West*, 11 Vet.App. 67, 73–74, (1998).

Even if there were such an individual notice right, it is plain from the ROA here that the veteran had knowledge of any right to submit additional evidence before the BVA's October 1995 decision. *See* R. at 250 (March 1994 order of Court noted that on remand " 'appellant will be free to present additional evidence and argument' " (quoting *Quarles v. Derwinski*, 3 Vet.App. 129, 141 (1992))); R. at 256 (June 1994 statement in support of claim stated: "I had submitted [ ] additional information after I had received a [decision] from the U.S. Court of Veterans Appeals advising me that additional information would be accepted."); R. at 273 (September 1994 letter from VA to veteran requested information on facilities where he was treated and completion of privacy-waiver forms so that VA can "secur[e] additional medical evidence"); R. at 276 (September 1994 statement in support of claim noted: "If I can locate additional information[,] I will provide it as soon as possible"). Such actual knowledge on the veteran's part would have cured a defect in the notification in the instant case, had there been one. *Cf. Ashley v. Derwinski*, 2 Vet.App. 307, 311 (1992) (actual receipt by representative cured defect in timely mailing of BVA decision to representative).

Finally, even if the veteran's *actual* knowledge of the right to submit additional evidence did not cure any defect in notice, as the Court today holds it does, the Court has held that an *Austin* violation can result in an unfair adjudication and a remand only if the Court determines that the Board correctly reached the merits of the claim in a claim to reopen. *See Moffitt v. Brown*, 10 Vet.App. 214, 226 (1997) (holding that there could be prejudicial *Austin* error only if "Court determines that denial of the § 1310 [dependency and indemnity compensation] claim was properly reopened by the Board"); *see also Dean* (nonprejudicial *Thurber* error) and *Edenfield* (nonprejudicial *Thurber* error), both *supra; cf. Yabut v. Brown*, 6 Vet.App. 79, 85 (1993) ("failure of the BVA [in violation of *Thurber* ] to provide appellant with notice and an opportunity to respond to the medical treatises superfluously cited in its decision constitutes harmless error"); *cf. also Junstrom v. Brown*, 6 Vet.App. 264, 268 (1994). In the instant case, the Court sees no distinc-

tion between applying that principle of nonprejudice as to an *Austin* error to an original claim that is not well grounded but that the Board erroneously found to be well grounded, or, in that respect, between an *Austin* and a *Thurber* error. Hence, even if there had been any general violation of the *Thurber* or *Austin* requirements, or of any broadly stated "fair process" requirement, such violation would have been nonprejudicial because, in any event, the appellant's claim for service connection for a gastrointestinal disorder was not well grounded in that he had adduced no medical nexus evidence connecting his present conditions to service. *See Libertine, Brock,* and *Caluza,* all *supra.*

### C. Secondary Service–Connection Claim

■■■■ The appellant also contends that the Board failed to address an implicit secondary-service-connection claim that his gastrointestinal disorder was the result of, inter alia, pain medication taken for his service-connected right-shoulder condition. It is true that the Board must liberally construe all submissions. *See EF v. Derwinski*, 1 Vet.App. 324, 326 (1991). However, this Court's appellate jurisdiction derives exclusively from the statutory grant of authority provided by Congress and may not be extended beyond that permitted by law. *See Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 818, 108 S.Ct. 2166, 2178–79, 100 L.Ed.2d 811 (1988); *see also Prenzler v. Derwinski*, 928 F.2d 392, 393–94 (Fed.Cir. 1991); *Skinner v. Derwinski*, 1 Vet.App. 2, 3 (1990). The Court has no jurisdiction over an issue absent a post-November 18, 1988, NOD, expressing disagreement with an RO's decision on that issue or with an RO's failure to adjudicate that claim. *See* Veterans' Judicial Review Act, Pub.L. No. 100–687 § 402, 102 Stat. 4105, 4122 (1988) (found at 38 U.S.C. § 7251 note); *Slater v. Brown*, 9 Vet. App. 240, 244–45 (1996); *Isenbart v. Brown*, 7 Vet.App. 537, 540–41 (1995); *see also Barrera v. Gober*, 122 F.3d 1030, 1032 (Fed.Cir. 1997) ("veteran's overall claim, or case, for benefits is comprised of separate issues, and . . . Court of Veterans Appeals has jurisdiction to consider an appeal concerning one or more of those issues, provided a[n] NOD has

been filed after the effective date of the [VJRA] with regard to the particular issue"); *Grantham v. Brown,* 114 F.3d 1156, 1158–59 (Fed.Cir.1997); *see also Johnston v. Brown,* 10 Vet.App. 80, 89–91 (1997) (Steinberg, J., concurring) ("absent a valid NOD as to the ... claim in this case, the Court lacks jurisdiction to remand that claim to the BVA"). Because the Court can find no jurisdiction-conferring NOD in the record as to the RO's failure to adjudicate a secondary-service-connection claim for a gastrointestinal disorder, such a claim is not properly before the Court. *Compare Ledford v. West,* 136 F.3d 776, 779–80 (Fed.Cir.1998) (Court lacked jurisdiction over constitutional challenge as to denial of claim for total disability based on individual unemployability (TDIU) because veteran had never filed NOD as to TDIU claim), *with Collaro v. West,* 136 F.3d 1304, 1309–10 (Fed. Cir.1998) ("vague NOD" expressed disagreement with denial of TDIU and constitutional challenge to that denial, even though those challenges were not specifically articulated in NOD). Moreover, the Court notes that a secondary-service-connection claim is well grounded only if there is medical evidence to connect the asserted secondary condition to the service-connected disability. *See Locher v. Brown,* 9 Vet.App. 535, 538–39 (1996) (citing *Reiber v. Brown,* 7 Vet.App. 513, 516–17 (1995), for proposition that lay evidence linking a fall to a service-connected weakened leg sufficed on that point as long as there was "medical evidence connecting a currently diagnosed back disability to the fall"); *Jones (Wayne) v. Brown,* 7 Vet.App. 134, 136–37 (1994) (lay testimony that one condition was caused by service-connected condition was insufficient to well ground claim). Here, there is no such evidence to well ground such an implicit secondary-service-connection claim.

### III. Conclusion

Upon consideration of the foregoing analysis, the record on appeal, and the pleadings of the parties, the Court holds that the appellant has not demonstrated that the BVA committed error—in its findings of fact, conclusions of law, procedural processes, or articulation of reasons or bases—that would warrant remand or reversal under 38 U.S.C.

§§ 1110, 1154(b), 5107(a), 7104(a) and (d)(1), 7105(d), and 7261(b) or *Austin* and *Thurber, supra.* The Court therefore affirms the October 31, 1995, decision of the Board.

AFFIRMED.