**Raymond H. JONES, Appellant,**

v.

**Togo D. WEST, Jr., Secretary of
Veterans Affairs, Appellee.**

**No. 96–1404.**

United States Court of Veterans Appeals.

Dec. 22, 1998.

Cindy B. Smith was on the briefs for the appellant.

John H. Thompson, Acting General Counsel; Ron Garvin, Assistant General Counsel; Joan E. Moriarity, Deputy Assistant General Counsel; and Darryl A. Joe were on the brief for the appellee.

Before NEBEKER, Chief Judge, and HOLDAWAY and STEINBERG, Judges.

STEINBERG, Judge:

The appellant, veteran Raymond H. Jones, appeals through counsel a July 10, 1996, decision of the Board of Veterans' Appeals (BVA or Board) denying entitlement to an effective date earlier than May 29, 1992, for resumption of Department of Veterans Affairs (VA) service-connected disability compensation for psychoneurosis, currently rated as 10% disabling. Record (R.) at 5. The appellant has filed a brief and a reply brief; the Secretary filed a brief. This appeal is timely, and the Court has jurisdiction pursuant to 38 U.S.C. §§ 7252(a) and 7266(a). For the reasons that follow, the Court will vacate the BVA decision and remand two matters for further proceedings.

## I. Background

The appellant had active duty in the U.S. Army as an entertainment specialist from April 1943 to May 1945 (R. at 84). On May 17, 1945, upon his discharge from service, he filed with a VA regional office (RO) an application for VA service-connected disability compensation for an "[o]ld back injury aggravated during basic training [in] May 1943" and for symptoms of psychoneurosis and hysteria [hereinafter psychoneurosis]. R. at 96. Seven days later, the VARO awarded service connection for psychoneurosis, incurred in service, and granted a 30% rating (R. at 88); that award was reduced to 10% in 1948 (R. at 139). Neither rating decision addressed the veteran's back claim. See R. at 88, 139.

On July 6, 1948, an RO sent a letter to the veteran at "912 Locust Street, Kansas City, Missouri" (912 Locust St.) (R. at 150) to which the veteran specifically responded in August 1948 (see R. at 103 ("After receiving your letter of July 6th....")). In his letter the veteran included a request that VA correspond with him at "912 Locust St., Kansas City, Mo.—Room 221" (R. at 104).

The Secretary states that VA mailed to the veteran at 912 Locust St., without a room number, notice of a January 12, 1949, physical examination to be conducted for "pension purposes" (see Brief (Br.) at 4 (citing R. at 156 (discussed in part II.A., below))). In February 1949, VA mailed to the veteran at 912 Locust St., again without a room num-

ber, a letter stating that due to his failure to report for a physical examination his payments would be "discontinued" but noting that if the veteran in the future "inform[ed] ... [VA] of [his] willingness to submit to a physical examination by this Administration, such an examination will be arranged, and when it has been accomplished, appropriate action will be taken on [his] claim". R. at 159.

According to the veteran's June 1995 sworn testimony before the RO in Manila, the Philippines, some time in 1992 he appeared at that RO and asked whether he was due any "benefits or pension". R. at 275. The record on appeal (ROA) contains correspondence dated from May 1992 to February 1993. These items refer to other documents that are not in the ROA, and the Secretary does not explain their absence. According to a Statement of the Case issued by the RO in January 1994 (R. at 267), a May 22, 1992, letter of the veteran (located at R. at 164) was received by VA on May 29, 1992, and accepted as an application for service-connected benefits or non-service-connected pension. (According to the Board, however, the information that the RO "construed as a claim" was "submitted" by the veteran "[o]n May 2, 1992". R. at 6; see also R. at 8.) In March 1993, the RO received a clinical abstract from a private physician, Dr. Chan, describing the veteran's in-service back injury and his current "ache in the socroiliac [sic] area". R. at 193–97. An April 1993 VA examination did not encompass the veteran's back condition. See R. at 198–223.

In September 1993, the RO awarded the veteran a 10% rating for his psychoneurosis, effective May 29, 1992. R. at 233. Again, no reference was made to his back condition. See ibid. The veteran complained to VA in a September 1993 letter that the VA examiner had not examined his back, which the veteran stated was his "main problem". R. at 243. In the June 10, 1996, BVA decision here on appeal, the Board denied an effective date earlier than May 29, 1992, for the resumption of compensation for psychoneurosis. R. at 4. That decision did not mention the veteran's back claim. See R. at 4–11.

## II. Analysis

### A. Psychoneurosis Claim

*1. Presumption of Regularity.* The appellant argues that he did not receive any notice that he should report for an examination or that subsequent compensation payments would be suspended for such failure; he also implies the possibility that such notice was in fact never mailed to him at all (see Br. at 12 ("it appears that the VA *may* have sent notice of the examination" (emphasis added))). Further, the veteran claims not to have received notice of the actual suspension of benefits following the examination to which he did not report. See, e.g., R. at 275 (veteran alleges that VA sent notification to incorrect address). Accordingly, the appellant asserts that the BVA's finding that he had been given adequate notice that he would no longer receive compensation for his service-connected psychoneurosis (R. at 6) was in error. We disagree and hold, for the following reasons, that under the facts of this case the veteran was provided adequate notice that his compensation would not be continued.

"There is a presumption of regularity under which it is presumed that government officials 'have properly discharged their official duties'. *United States v. Chemical Foundation, Inc.,* 272 U.S. 1, 14–15, 47 S.Ct. 1, 71 L.Ed. 131 (1926)." *Ashley v. Derwinski,* 2 Vet.App. 307, 308 (1992) (*Ashley II*); see also *Mindenhall v. Brown,* 7 Vet.App. 271 (1994) ("the presumption of regularity ... applies to the VA mailing of the RO decision in the same manner as it applies to the BVA mailing of the decision" (citing *Ashley v. Derwinski,* 2 Vet.App. 62, 64–65 (1992) (*Ashley I* ))). Therefore, VA is presumed to have properly discharged its official duty to mail notice to the veteran of the 1949 physical examination and, subsequently, notice that his compensation was "discontinued" because of his failure to report. However, "[t]he presumption of regularity is not absolute; it may be rebutted by the submission of clear evidence to the contrary". *Ashley II,* 2 Vet.App. at 309 (citing *Rosler v. Derwinski,* 1 Vet.App. 241, 242 (1991)); see also *YT v. Brown,* 9 Vet.App. 195, 199 (1996); *Mindenhall,* 7 Vet.App. at 274; *Ashley I, supra.*

In arguing that the presumption of regularity has been rebutted in this case by clear evidence to the contrary, the appellant puts forth a series of arguments. First, he points out that it is not clear based on the ROA that the prior notice to report for a physical examination was actually sent to the veteran. The ROA contains what the Secretary alleges (*see* Br. at 4) to be notice of the physical examination (R. at 156), but it is not clear to the Court that the document cited by the Secretary actually is what the Secretary alleges it to be. The document is a piece of paper with the veteran's "912 Locust St." address but without the room number, and additionally with what appears to be a claims file number and "12:30p.m. on January 12, 1949", typed upon it, along with some faint handwriting that apparently says, "Did not report for physical examination for pension purposes [illegible]", and the reverse image of what appears to be a rubber stamp reading, "MEDICAL PENSION JAN 26 1949" (R. at 156). That is all that the document shows. When the Secretary cites to and relies on ambiguous records in his brief to this Court, it would be preferable for the Secretary to explain the interpretation VA gives the document.

However, the Court notes that the ROA contains a copy·of a February 4, 1949, notice of suspension of benefits payments that stated that if the veteran "informed this office of [his] willingness to submit to a physical examination" then at that point further action would be taken on his claim. *See* R. at 159. Hence, even if the veteran was not sent notification of the January 12, 1949, examination, any such error was not prejudicial to him in this case because, based on the February 4, 1949, letter from VA, the veteran was sent notice that his receipt of payments would not continue after January 1949 and was thus afforded the opportunity to protest that action. *See* 38 U.S.C. § 7261(b) (Court shall take due account of rule of prejudicial error); *Edenfield v. Brown*, 8 Vet.App. 384, 390–91 (1995) (en banc). Therefore, the Court will consider the February 4, 1949, document as evidence that VA mailed notice to the veteran at his latest address of record, *see Hyson v. Brown*, 5 Vet.App. 262, 264–65 (1993), and, therefore, adequately provided notification to him of the action taken regarding his payments.

■ Having determined that VA generated and apparently mailed in due course notice of its decision to discontinue payment, and because that notice is not alleged to have been returned as undeliverable by the Post Office, *see, e.g., Hyson, supra* (when notice returned as undeliverable by USPS presumption of regularity does not attach), the issue becomes whether the undisputed fact that the documents were mailed to "912 Locust St." instead of "912 Locust St.—Room 221" is "clear evidence" that rebuts the presumption of regularity. *See YT, Mindenhall, Ashley II,* and *Ashley I,* all *supra.* The Court notes that the veteran's August 2, 1948, letter to VA (*see* R. at 103–04) specifically referred to VA's "letter of July 6" (R. at 104), which was addressed to the veteran at "912 Locust St." without a room number (*see* R. at 150). Thus, the veteran had received at least one piece of correspondence at 912 Locust St., without a room number, and the ROA contains no other correspondence mailed to the veteran at 912 Locust St. to which the veteran did *not* respond, and thus that could have supported his contention that he was not receiving mail at that address. Accordingly, VA had no reason to believe that the address that it was using was insufficient, and the evidence shows that the veteran was in fact receiving mail sent to the address VA was using. Because the veteran had specifically responded to correspondence sent to the identical address to which VA sent notification of the February 1949 RO decision, the Court cannot find that the irregularity of the missing room number alone is sufficient to overcome the presumption of regularity. *See Hyson,* 5 Vet.App. at 265 (describing duty of veteran to keep VA apprised of his whereabouts); *cf. Ibeling v. Brown,* 8 Vet.App. 256, 259 (1995) (letter from appellant referring to BVA decision deemed evidence that appellant had received such decision).

■ Next, we must determine whether the use of the incomplete address *coupled with* the veteran's assertions that he did not actually receive the notice constitute the req-

uisite "clear evidence" to rebut the presumption of regularity. At the outset, we note that it is well established that the assertion of nonreceipt, standing alone, does not rebut the presumption of regularity in VA's mailing process. *See, e.g., YT*, 9 Vet.App. at 199; *Ashley II*, 2 Vet.App. at 309. In *Chute v. Derwinski*, 1 Vet.App. 352 (1991) (per curiam order), where the Court held the presumption to have been rebutted, the Court was presented with an assertion of nonreceipt of a BVA decision coupled with evidence that the veteran had inquired of his service officer about the whereabouts of the decision three weeks after the date of issuance *and*, further, VA could not produce actual evidence, such as a coversheet, that the document at issue had in fact been properly mailed. *See also Hyson, supra* (rebutting presumption with allegation of nonreceipt coupled with notice having been returned as undeliverable by USPS). The pertinent facts of this case are significantly different from those in *Chute, supra*. In the instant case, VA has produced a copy of the letter notifying the veteran that his payments were "discontinued" (R. at 159), and the ROA is devoid of any evidence or assertion that the letter was returned as undeliverable. Further, the veteran in this case did not inquire as to his benefits for over forty years; in the past, this Court has been unwilling to rebut the presumption of regularity based on asserted nonreceipt when that assertion followed a ten-year period during which "[t]he appellant's inability or incapacity to contact VA ... has not been shown". *Mindenhall*, 7 Vet.App. at 274.

Finally, the Court notes that the appellant's reliance on *Hyson, supra*, is misplaced. It is true that, in that case, the Court determined that VA had a duty to mail notice of a physical examination to other known addresses of the veteran prior to terminating his benefits and that in that case—as well as in the case at bar—VA was aware of other addresses used by the appellant. In *Hyson*, however, the notice to report was actually returned to VA by the Postal Service as "undeliverable", *Hyson*, 5 Vet.App. at 264, and, further, the Court stressed that the *Hyson* decision was limited to the *"peculiar facts of* [the *Hyson*] *case "*, specifically including the fact that the notice had been

returned to VA, *ibid.* (emphasis in original). In the instant case, there is no evidence that the notice was returned as "undeliverable"; furthermore, in the instant case the veteran had specifically told VA to use his new address, whereas, in *Hyson* VA was aware of at least two different, and apparently current, addresses—one a residence that the veteran purchased using funds from a VA loan (unrelated to the matter presented in *Hyson*) and the other an address at which the veteran had received VA correspondence relating to the claim that was actually at issue in *Hyson, see Hyson*, 5 Vet.App. at 264 (noting veteran had an address relating to a VA home loan and that that address was apparently not used by the veteran in correspondence relating to the claim at issue in *Hyson*). In light of the foregoing, the Court holds that the presumption of regularity has not been rebutted, and thus the Board did not err in concluding that the veteran was properly notified that his benefits were not going to be continued. *See Mindenhall*, 7 Vet.App. at 274 (apparently applying "clearly erroneous" standard of review to BVA determination that, inter alia, RO had timely informed appellant of decision). This does not end our inquiry, however.

**2. Suspended Versus Discontinued Payments and/or Abandoned Claims.** The Board determined that the veteran was presenting a claim for resumption of entitlement to an abandoned claim. R. at 7. The appellant argues that the RO improperly considered his claim abandoned and that payments are due for the period from 1949 to 1992 when payments by VA to the veteran were suspended.

The VA regulation in force when the veteran's disability compensation payments were "discontinued" provided in pertinent part as follows:

(a) Upon the failure of a veteran without adequate reason to report for physical examination, requested for disability compensation ... purposes, the award of disability compensation ... in [the] course of payment to him will be **suspended** as of the date of last payment. The reason given for **suspension** will be "Failure to report

for examination." ... (Resumption of payments, see § 3.266.)

. (b) Upon the failure of a veteran to report for physical examination, requested as a result of a *claim for increased disability compensation* ... the claim for the increase will be considered as *abandoned.* No further action thereupon will be taken unless and until a new claim for the increase is filed.

38 C.F.R. § 3.251 (1949) (emphasis added). The regulation (38 C.F.R. § 3.266 (1949)) referenced in § 3.251(a), above, regarding the resumption of a suspended (as opposed to an abandoned) award provided in pertinent part as follows:

> *Resumption of discontinued award where veteran subsequently reports for physical examination.* If, after *suspension* of his award, the veteran should subsequently report for physical examination and the evidence clearly establishes to the satisfaction of the rating agency concerned that during the period of his failure to report the disability in fact existed to a compensable degree, an award may be approved effective the date of *suspension.*

38 C.F.R. § 3.266 (1949) (boldface emphasis added).

The current regulation, entitled, "**Abandoned claims**", provides:

(a) *General.* Except as provided in § 3.652 of this part [entitled "Periodic certification of continued eligibility"], where evidence requested in connection with an original claim, a claim for increase or to reopen or for the purpose of determining continued entitlement is not furnished within 1 year after the date of request, the claim will be considered *abandoned.* After the expiration of 1 year further action will not be taken unless a new claim is received. Should the right to benefits be finally established, pension, compensation, dependency and indemnity compensation, or monetary allowance under the provisions of 38 U.S.C. § 1805 based on such evidence *shall commence not earlier than the date of filing the new claim.*

(b) *Department of Veterans Affairs examinations.* Where the veteran fails without adequate reason to respond to an order to report for Department of Veterans Affairs examination within 1 year from date of *request* and payments have been *discontinued*, the claim for *such benefits* will be considered *abandoned.*

(c) *Disappearance.* Where payments of pension, compensation, dependency and indemnity compensation, or monetary allowance under the provisions of 38 U.S.C. § 1805 have not been made or have been discontinued because a payee's present whereabouts is unknown, payments will be *resumed effective the day following the date of last payment if entitlement is otherwise established, upon receipt of a valid current address.*

38 C.F.R. § 3.158(b) (1998) (boldface italics added). *See also* 38 C.F.R. § 3.330 (1998) (entitled "**Resumption of rating when veteran subsequently reports for Department of Veterans Affairs examination**"). The Court notes many ambiguities in the above-quoted regulation, some of which will need to be addressed on remand if the Board determines that the regulation applies. First, it appears (although it is not explicitly stated) that a VA examination under § 3.158(b) is a form of "evidence requested" under paragraph (a). Such a construction would provide a context for construing "request" and "such benefits" in paragraph (b), whereas paragraph (b) itself contains no antecedents for those words. It is unclear whether the words "and payments have been discontinued" in paragraph (b) are intended to provide the authority to "discontinue[ ]" payment of "such benefits", or if that authority exists elsewhere. Also noteworthy is that paragraph (c), relating to payments that "have not been made or have been discontinued because a payee's present whereabouts is unknown" provides for the kind of retroactive resumption of payments (effective, in the current regulation, the "day following the date of last payment") that are described in § 3.266 (1949) (providing that resumption of payment "may be approved effective the date of suspension"). Finally, we note that the Board appears to have correctly determined that 38 C.F.R. § 3.655(c) (1998) (entitled "**Running award**") does not apply to this case because the veteran's claim has appar-

ently been abandoned, discontinued, or suspended under all potentially applicable regulations, and therefore no "running award" was in effect when the appellant presented his application in May 1992.

Thus, under current VA regulations, if a veteran, who is receiving disability compensation, fails to report for a scheduled VA examination VA will apparently *discontinue*, rather than *suspend*, payment, and, further, will consider the claim for benefits abandoned if, within one year, the veteran has not responded to the order to report; conversely, under the 1949 regulations, a failure to report for an examination would lead to a suspension of payments, but apparently, under appropriate circumstances, payments could be resumed as of the date that the payments were suspended. *Compare* 38 C.F.R. § 3.266 (1949) *with* 38 C.F.R. § 3.158(a) (1998). In this case, the Board applied current regulatory law and determined that the veteran was not entitled to a date earlier than the date of his 1992 claim for compensation.

■ "Where the law or regulation changes after a claim has been filed or reopened but before the administrative or judicial appeal process has been concluded, the version most favorable to the appellant should apply unless Congress provided otherwise or permitted the [Secretary] to do otherwise and the Secretary did so." *Karnas v. Derwinski*, 1 Vet.App. 308, 313 (1991). In order for *Karnas* to apply, the administrative process must not have "been concluded", *ibid.*, and it is unclear whether the 1949 suspension "concluded" the administrative process such that the 1949 regulations are not for application. Under *Karnas*, then, one key question is whether the Board was presented in 1996 with a new claim, i.e., one that had been initially filed in 1992, or, rather, with an unadjudicated claim that had been suspended since 1949. Regarding this matter, the Court notes that the 1949 regulations specifically differentiated in § 3.251 between abandonment of a "claim for increased disability compensation" in paragraph (b), which required the filing of a new claim once "the claim for the increase [was] considered as abandoned", and "suspension" in paragraph

(a), which provided, by cross reference to § 3.266, that if and when the veteran reported for an examination while payments were suspended he could, under certain circumstances, receive restoration of benefits as of the date of the original suspension; thus, paragraph (b) appears to limit the applicability of the treatment of a claim as abandoned solely to claims for increased compensation whereas paragraph (a) would apparently apply to all other situations, including that presented in the case at bar, where the requested examination in question (in 1949) was in connection with an existing award of disability compensation.

At this point, the Court notes that counsel for the Secretary cites and correctly quotes 38 C.F.R. § 3.251 (1949) in his brief (Br. at 7–8)—including the portion of it that explicitly references 38 C.F.R. § 3.266 (1949)—but does not similarly provide to the Court the text of § 3.266 then in effect. It is troubling that the Secretary should set forth the text of the one and not the other, especially when the latter is of such potential benefit to the appellant. *See Penny v. Brown*, 7 Vet.App. 348, 351 (1995) ("Secretary has a duty to inform the Court of the facts and the law applicable in each appeal").

■ The Board is required to include in its decision a written statement of the reasons or bases for its findings and conclusions on all material issues of fact and law presented on the record; the statement must be adequate to enable an appellant to understand the precise basis for the Board's decision, as well as to facilitate review in this Court. *See* 38 U.S.C. § 7104(d)(1); *Allday v. Brown*, 7 Vet.App. 517, 527 (1995); *Gilbert v. Derwinski*, 1 Vet.App. 49, 57 (1990). In this case, the Board cited and accurately described the 1949 regulations (R. at 7), but then simply ignored them and applied current regulations, primarily 38 C.F.R. § 3.158(b) (1998), to preclude an effective date earlier than 1992 without providing an explanation as to when and how the regulations where changed and whether they were intended to have retroactive effect and, if so, to what extent. Nor did the Board explain whether the veteran's claim was suspended or discontinued; the RO in 1949 had used the

term "discontinued" in its February 1949 letter notifying the veteran of his failure to report (R. at 159), but we presume that the term could not have been intended as a term of art, given that the current regulation (38 C.F.R. § 3.158 (1998)) that describes discontinuance of payments was not in force in 1949. (It is interesting, but perhaps of no significance, that whereas the texts of §§ 3.251(a) and 3.266 contain the words "suspended" and "suspension" and never refer to "discontinued" or "discontinuance", the heading of § 3.266 is *"Resumption of discontinued award"*. *See* 38 C.F.R. §§ 3.251(a), 3.266 (1949). Similarly, the Board described the RO's February 1949 action as having "suspended payment of compensation benefits", but also stated that the veteran had been notified of the "discontinuance of his compensation benefits". R. at 6.) Accordingly, the statement of reasons or bases supporting the BVA decision is inadequate and thus frustrates effective judicial review; remand is necessary for the Board to consider the historical regulatory situation presented by this case. *See* 38 U.S.C. § 7104(d); *Allday* and *Gilbert,* both *supra.*

Finally, the Board did not explain why, even if the 1949 regulations do not apply, it did not afford the veteran an effective date of May 2, 1992, as opposed to May 29, 1992, when it specifically found in two separate places in its decision that the veteran's claim was initially filed on May 2. R. at 6, 8. Similarly, neither the Secretary nor the BVA attempts to explain why the ROA is apparently missing several documents regarding the actions of the Manila RO. For example, the earliest document in the ROA that was received by the Manila RO is a letter dated May 22, 1992, but that letter refers to earlier interactions, apparently with either or both the U.S. Embassy Office and the RO. *See* R. at 164. Other documents refer to "instructions from the National Personnel Records Center" (R. at 169 (August 3, 1992, letter from veteran to RO)), correspondence with "St. Louis" (R. at 174), and other forms and correspondence absent from the ROA. *See, e.g.,* R. at 177, 184. The Court trusts that in the future the Secretary will make greater effort to provide a complete ROA or to explain the obvious absence of potentially relevant documents and, further, will endeavor to discover on remand any evidence potentially favorable to the veteran as part of VA's duty to assist him in developing "the facts pertinent to the claim". 38 U.S.C. § 5107(a).

### B. Claim for Back Disorder

The appellant also asserts that the RO and the Board have failed to adjudicate a back claim and asks the Court to remand that claim for proper adjudication. Based on the following analysis, the Court agrees with the appellant on this question.

■ The Court has held that where a "review of all documents and oral testimony reasonably reveals that the claimant is seeking a particular benefit, the Board is required to adjudicate the issue of the claimant's entitlement to such a benefit or, if appropriate, to remand the issue to the RO for development and adjudication of the issue." *Suttmann v. Brown,* 5 Vet.App. 127, 132 (1993); *see also Solomon v. Brown,* 6 Vet.App. 396, 402 (1994); *EF v. Derwinski,* 1 Vet.App. 324, 326 (1991). In this case, the veteran filed in 1945 a claim for, inter alia, an "[o]ld back injury aggravated during basic training [in] May 1943 which has given periodic trouble since". R. at 96. Further, the RO should have been placed on notice of the claim when the veteran pressed his claim in 1992 by submitting a private medical record from Dr. Chan in April 1993 specifically discussing the veteran's complaints of back pain and describing the in-service injury to his back. R. at 193. Accordingly, the Court holds that the veteran filed a claim for service connection for his back in 1945, and that that claim has never been adjudicated. The Secretary apparently concedes this. *See* Br. at 14 (Secretary "acknowledges" that appellant's back claim "has never been adjudicated by the BVA").

■ This Court's appellate jurisdiction derives exclusively from the statutory grant of authority provided by Congress and may not be extended beyond that permitted by law. *See Christianson v. Colt Indus. Operating Corp.,* 486 U.S. 800, 818, 108 S.Ct. 2166, 100 L.Ed.2d 811 (1988); *Prenzler v. Derwinski,* 928 F.2d 392, 393–94 (Fed.Cir.1991); *Ve-*

*lez v. West,* 11 Vet.App. 148, 157 (1998); *Skinner v. Derwinski,* 1 Vet.App. 2, 3 (1990). The Court has jurisdiction to review only those final BVA decisions prior to which a Notice of Disagreement (NOD) was filed on or after November 18, 1988, as to an underlying decision of an RO or other agency of original jurisdiction. *See* Veterans' Judicial Review Act, Pub.L. No. 100–687, § 402, 102 Stat. 4105, 4122 (1988) (found at 38 U.S.C. § 7251 note) [hereinafter VJRA § 402]; 38 U.S.C. § 7105; *Barrera v. Gober,* 122 F.3d 1030, 1031 (Fed.Cir.1997); *Grantham v. Brown,* 114 F.3d 1156, 1157 (Fed.Cir.1997); *Velez,* 11 Vet.App. at 157 ("Court has no jurisdiction over an issue absent a post-November 18, 1988, NOD, expressing disagreement with an RO's decision on that issue or with an RO's failure to adjudicate that [issue]"). An NOD is defined by regulation as "[a] written communication from a claimant or his or her representative expressing dissatisfaction or disagreement with an adjudicative determination by the [RO] and a desire to contest the result"; it "must be in terms which can be reasonably construed as [expressing] disagreement with that determination and a desire for appellate review". 38 C.F.R. § 20.201 (1997); *see also Beyrle v. Brown,* 9 Vet.App. 24, 27 (1996); *Hamilton v. Brown,* 4 Vet.App. 528, 531 (1993) (en banc), *aff'd,* 39 F.3d 1574, 1584–85 (Fed.Cir. 1994). "Whether a document is an NOD is a question of law for the Court to determine de novo under 38 U.S.C. § 7261(a)." *Beyrle,* 9 Vet.App. at 27–28; *see also Hamilton,* 4 Vet.App. at 538–44 (determining whether jurisdictionally valid NOD had been filed with respect to claim without having had such determination made by the Board), *aff'd,* 39 F.3d at 1584–85. There can be only one valid NOD as to a particular issue until a final RO or BVA decision has been rendered in that matter, or the appeal has been withdrawn by the claimant. *See Hamilton,* 4 Vet.App. at 531–32, *aff'd,* 39 F.3d 1581–85.

■ Just as the Court's jurisdiction is dependent on a jurisdiction-conferring NOD, the Board's jurisdiction, too, derives from a claimant's NOD. *See Marsh v. West,* 11 Vet. App. 468 (1998) ("untimely NOD deprives [BVA] of jurisdiction"); *Garlejo v. Brown,* 10 Vet.App. 229, 232 (1997) (Board did not err in refusing to adjudicate matter as to which no NOD was filed). When the Board has jurisdiction over a particular matter, that jurisdiction is "mandatory". *In the Matter of Fee Agreement of Cox,* 10 Vet.App. 361, 374 (1997), *vacated in part on other grounds sub nom. Cox v. West,* 149 F.3d 1360, 1365 (Fed.Cir.1998) (holding expressly that this Court properly held that such decision by Secretary is mandatory); *see also Suttmann, Soloman,* and *EF,* all *supra* (Board must adjudicate all claims reasonably raised to it).

■ The Secretary argues that the Court does not have jurisdiction over the back claim because no NOD has been timely filed as to that issue. We disagree. In this case, the veteran submitted to the RO prior to the April 1993 RO decision Dr. Chan's April 1992 medical report that referred to the veteran's history of a 1943 fall during basic training, a 1945 x-ray of the spine, and a sacroiliac ache (R. at 193). *See* R. at 233 (RO decision listing Dr. Chan's report as evidence). Then, in response to the RO's September 15, 1993, letter transmitting its decision to him (R. at 237), the veteran submitted a letter dated September 22, 1993, that stated: "The VA examination did not X[-]ray my lower back.... That is my main problem[,] the back trouble" (R. at 243); later, he again wrote to the RO describing his back pain both during and after service and requested "the VA benefits [that] I was supposed to receive since 1945" (R. at 256). Hence, the veteran protested the failure of the RO to adjudicate his back claim. The Court thus construes the September 1993 letter as an NOD regarding the RO's failure to adjudicate his back claim (initiated in 1945); we are not limited by the Secretary's characterization (in the Table of Contents to the ROA) of the veteran's January 1994 statement (R. at 262) as the NOD, *see Beyrle, supra* (Court may construe document as NOD even when Secretary did not construe it as such), and we may consider the totality of the facts presented in this matter, *see Isenbart v. Brown,* 7 Vet.App. 537, 540–41 (1995) (Court considered totality of communications before and after NOD in concluding that it encompassed disagreement with RO failure to adjudicate particular claim).

Hence, the Court holds that the September 1993 letter constituted an NOD as to the RO's failure to adjudicate the veteran's back claim. Accordingly, we have jurisdiction to remand the matter of the Board's failure to adjudicate the veteran's back claim in its 1996 decision. *See* VJRA § 402; *Hamilton,* 4 Vet.App. at 531, *aff'd* 39 F.3d at 1584–85; *see also Collaro v. West,* 12 Vet.App. 63, (1998) (remanding claim to Board for failure to consider arguments unaddressed in BVA decision on appeal); *Meeks v. Brown,* 5 Vet. App. 284, 287 (1993) (Court remands matter that Board failed to adjudicate); *Russell v. Principi,* 3 Vet.App. 310, 320 (1992) (en banc) (Court remands for BVA to determine, in first instance, whether error made by RO in 1972 was "clear and unmistakable error"); *Isenhart v. Derwinski,* 3 Vet.App. 177 (1992) (failure to adjudicate claim for pension resulted in that claim remaining open despite grant of subsequent claim for pension and open claim remanded for adjudication of whether pension should be awarded for period prior to effective date of the later award); *see generally Suttmann* and *Solomon,* both *supra.*

### III. Conclusion

Upon consideration of the foregoing analysis, the ROA, and the submissions of the parties, the Court vacates the October 1, 1996, BVA decision and remands both matters for expeditious further development and issuance of a readjudicated decision supported by an adequate statement of reasons or bases, *see* 38 U.S.C. §§ 1131, 5107, 7104(a), (d)(1); 38 C.F.R. §§ 3.251, 3.266 (1949); 38 C.F.R. § 3.158(a), (b); *Karnas, supra; Fletcher v. Derwinski,* 1 Vet.App. 394, 397 (1991)—all consistent with this opinion and in accordance with section 302 of the Veterans' Benefits Improvements Act, Pub.L. No. 103–446, § 302, 108 Stat. 4645, 4658 (1994) (found at 38 U.S.C. § 5101 note) (requiring Secretary to provide for "expeditious treatment" for claims remanded by BVA or the Court) [hereinafter VBIA § 302]. *See Allday,* 7 Vet.App. at 533–34. Because of the appellant's age and the RO and BVA's failure to adjudicate his back claim, first presented in 1945, the Court expects that the Secretary will provide for exceptionally expeditious treatment above and beyond the re-quirements of VBIA § 302. "On remand, the appellant will be free to submit additional evidence and argument" on the remanded claim. *Quarles v. Derwinski,* 3 Vet.App. 129, 141 (1992). The Court notes that a remand by this Court and by the Board confers on an appellant the right to VA compliance with the terms of the remand order and imposes on the Secretary a concomitant duty to ensure compliance with those terms. *See Stegall v. West,* 11 Vet.App. 268, 271 (1998). A final decision by the Board following the remand herein ordered will constitute a new decision that, if adverse, may be appealed to this Court only upon the filing of a new Notice of Appeal with the Court not later than 120 days after the date on which notice of the new Board final decision is mailed to the appellant.

VACATED AND REMANDED.