Citation Nr: 1542422 
Decision Date: 09/30/15 Archive Date: 10/05/15

DOCKET NO. 04-25 813 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs (VA) Regional Office (RO)
in Phoenix, Arizona


THE ISSUES

1 .Entitlement to an effective date earlier than January 20, 1995, for the award of service connection for C-5 quadriplegia.

2. Entitlement to an effective date earlier than January 20, 1995, for the awards of special monthly compensation (SMC) based on the loss of use of both lower extremities, along with anal and bladder sphincter control, and the need for aid and attendance at a higher level of care.


REPRESENTATION

Appellant represented by: Richard L. Palmatier, Jr., Attorney 


WITNESSES AT HEARING ON APPEAL

Appellant and his wife



ATTORNEY FOR THE BOARD

L. Crohe, Counsel


INTRODUCTION

The Veteran had active duty service from October 1982 to December 1985.

This appeal to the Board of Veterans' Appeals (Board) arose from multiple rating decisions. 

By way of procedural history, in an October 1988 decision, the Board determined that the injuries sustained by the Veteran in an April 1983 motorcycle accident (the bases for his January 13, 1986 claim for service connection for quadriplegia) were the result of his own willful misconduct. The Board referred to the RO the matter of whether the Veteran's quadriplegia resulted from improper medical treatment following the accident. In a rating decision dated January 1989, the RO denied the claim for service connection for C-5 quadriplegia. 

Subsequently, in January 1995, the Veteran sought to reopen his claim for service connection for C-5 quadriplegia. In April 2000, the Board reopened the claim and granted service connection, on the merits. In implementing the Board's award of service connection for quadriplegia, the RO issued decisions in April and October 2000, in which it granted, inter alia, service connection for loss of use of both lower extremities, severe impairment bilateral upper extremities, voiding dysfunction, and complete loss of sphincter control, each as due to C-5 quadriplegia; as well as awarded SMC based on loss of use of lower extremities along with anal and bladder sphincter control and need for aid and attendance, all effective January 20, 1995. 

In a July 2001 rating decision, the RO awarded SMC based on loss of use of both lower extremities along with anal and bladder sphincter control and need for aid and attendance at a higher level of care, effective December 29, 2000. 

In January 2002, the Veteran's representative disagreed with the December 29, 2000 effective date, arguing that the effective date for the award of an increase in SMC and higher level of aid and attendance should have been January 20, 1995 (the date of the petition to reopen). 

In a January 2003 rating decision, the RO granted the requested January 20, 1995 effective date for the awards of SMC based on loss of use of both lower extremities, along with anal and bladder sphincter control, and the need for aid and attendance at a higher level of care. However, in July 2003, the Veteran's attorney filed a notice of disagreement (NOD) with the assigned January 20, 1995 effective date. A statement of the case (SOC) was issued in March 2004 and the Veteran filed a substantive appeal (via a VA Form 9, Appeal to the Board of Veterans' Appeals) in June 2004.

The appeal also arose from a July 2010 rating action in which the RO denied entitlement to an effective date earlier than January 20, 1995 for the award of service connection for C-5 quadriplegia. The Veteran filed a NOD in August 2010. A SOC was issued in March 2012 and the Veteran perfected his appeal with the filing of a substantive appeal in April 2012.

In January 2007, the Veteran and his wife testified during a Board hearing before the undersigned Veterans Law Judge at the RO. A hearing transcript has been associated with the record.

The RO issued supplemental SOCs' (SSOCs) reflecting the continued denials of the claims in May 2004, December 2006, July 2010, and March 2012.

As for the matter of representation, the Board observes that, in February 1986 and August 1997, the Veteran submitted a VA Form 21-22 (Appointment of Veteran Service Organization as Claimant's Representative) in which he designated Paralyzed Veterans of America (PVA) as his representative. In September 2000, he submitted a VA Form 21-22a (Appointment of Attorney or Agent as Claimant's Representative) in which he designated private attorney Theodore C. Jarvi as his representative. In October 2003, Mr. Jarvi notified the RO of his withdrawal as the Veteran's representative. Later that month, however, he wrote a letter indicating that the earlier letter was sent in error, and enclosed a properly executed VA Form 21-22a. Nonetheless in January 2015, the Veteran then submitted a new VA Form 21-22a in favor of private attorney Richard L. Palmatier. Jr. The Board recognizes the changes in representative. 

This appeal has been processed utilizing the paperless, electronic Veterans Benefits Management System (VBMS). The Board notes that, in addition to the VBMS file, there is a separate paperless, electronic Virtual VA file associated with the Veteran's claims. A review of the Virtual VA file reveals documents that are either duplicative of those contained in the VMBS file or irrelevant to the claims on appeal.

As a final preliminary matter, the Board notes that the claims file documents the Veteran's submission of multiple VA Forms 10-1394, Application for Adaptive Equipment Motor Vehicle; However, as this issue has not been adjudicated by the agency of original jurisdiction (AOJ). Therefore, the Board does not have jurisdiction over this matter, and it is referred to the AOJ for appropriate action. See 38 C.F.R. § 19.9(b) (2015).


FINDINGS OF FACT

1. The RO denied service connection for C-5 quadriplegia in a January 1989 rating decision, the Veteran was notified of this decision in a November 2, 1989 letter, and there is no NOD objecting to this determination in the record.

2. No new and material evidence was received during the one-year appellate period following the November 2, 1989 notification of the January 1989 RO denial of service connection for C-5 quadriplegia, and additional evidence associated with the claims file since the November 1989 notice of denial does not include relevant official service department records that existed but were not associated with the claims file when VA first decided the claim. 
 
3. On January 20 1995, the RO received a statement from the Veteran's representative at the time, which was accepted as a request to reopen the previously-denied claim for service connection for C-5 quadriplegia.
 
4. In April 2000, the Board reopened the previously denied claim and granted service connection for C-5 quadriplegia, on the merits. 

5. In implementing the Board's award of service connection for quadriplegia, the RO issued decisions in April and October 2000, in which it granted, inter alia, service connection for loss of use of both lower extremities, severe impairment bilateral upper extremities, voiding dysfunction, and complete loss of sphincter control, all as due to C-5 quadriplegia, as well as awarded SMC based on loss of use of lower extremities along with anal and bladder sphincter control and need for aid and attendance, each effective January 20, 1995.

6. In a July 2001 rating decision, the RO awarded SMC based on loss of use of both lower extremities along with anal and bladder sphincter control and need for aid and attendance at a higher level of care, effective December 29, 2000. In a January 2003 rating decision, the RO assigned an effective date of January 20, 1995 for the awards of SMC based on loss of use of both lower extremities, along with anal and bladder sphincter control, and the need for aid and attendance at a higher level of care. 

7. Prior to January 20, 1995, there were no pending claims for service connection for quadriplegia, or for SMC, pursuant to which the benefits ultimately awarded could have been granted.

8. The effective date for the award of service connection for service connection for C-5 quadriplegia is January 20, 1995; as the awards of SMC based on loss of use of both lower extremities, along with anal and bladder sphincter control, and the need for aid and attendance at a higher level of care, are premised on the claim for, and award of, service connection for C-5 quadriplegia, the effective date assigned for these awards can be no earlier than January 20, 1995.


CONCLUSIONS OF LAW

1. The claim for an effective date earlier than January 20, 1995, for the award of service connection for C-5 quadriplegia is without legal merit. 38 U.S.C.A. §§ 5101, 5110, 7105 (West 2014); 38 C.F.R. §§ 3.1, 3.151, 3.155, 3.400 (2015). 
 
2. The claim for an effective date earlier than January 20, 1995 for the awards of special monthly compensation based on loss of use of both lower extremities, along with anal and bladder sphincter control, and the need for aid and attendance at a higher level of care, is without legal merit. 38 U.S.C.A. §§ 5101, 5110, 7105 (West 2014); 38 C.F.R. §§ 3.1, 3.151, 3.155, 3.400 (2015).


REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

I. Due Process Considerations

The Veterans Claims Assistance Act of 2000 (VCAA), Pub. L. No. 106-475, 114 Stat. 2096 (Nov. 9, 2000) (codified at 38 U.S.C.A. §§ 5100, 5102, 5103, 5103A, 5106, 5107, and 5126 (West 2014) includes enhanced duties to notify and assist claimants for VA benefits. VA regulations implementing the VCAA were codified as amended at 38 C.F.R. §§ 3.102, 3.156(a), 3.159, and 3.326(a) (2015). 

As regards the Veteran's earlier effective date claims, he and his representative have been notified of the reasons for the denial of the claims, and have been afforded opportunity to present evidence and argument with respect to the claims. The Board finds that these actions are sufficient to satisfy any fundamental due process owed the Veteran. As will be explained below, this claims lack legal merit. As the law, and not the facts, is dispositive of the claims, the duties to notify and assist imposed by the VCAA are not applicable. See Mason v. Principi, 16 Vet. App. 129, 132 (2002). 

As regards the January 2007 Board hearing, it is noted that, in Bryant v. Shinseki, the United States Court of Appeals for Veterans Claims (Court) held that 38 C.F.R. § 3.103(c)(2) requires that the RO Decision Review Officer or Veterans Law Judge who chairs a hearing fulfill two duties: (1) to fully explain the issues and (2) to suggest the submission of evidence that may have been overlooked. Bryant v. Shinseki, 23 Vet. App. 488 (2010). In this case, the Board finds that there has been substantial compliance with the duties set forth in 38 C.F.R. 3.103(c)(2), and that the hearing was legally sufficient.

Here, during the January 2007 hearing, the undersigned Veterans Law Judge identified the claims on appeal. Moreover, the hearing transcript reflects appropriate exchanges between the Veteran, his wife, and the undersigned Veterans Law Judge regarding the basis for the Veteran's claims and the evidence associated with the record. The Veteran's spouse testified regarding the Veteran's health. . Although the undersigned Veterans Law Judge did not explicitly suggest the submission of any additional evidence, such omission was harmless. As explained below, because the Veteran cannot establish entitlement to any earlier effective date as a matter of law, there is no, existing, relevant evidence which changes the disposition of the claims Notably, neither the Veteran nor his representative has asserted that VA failed to comply with 38 C.F.R. § 3.103(c)(2), to include identification of any prejudice in the conduct of the hearing. 

II. Earlier Effective Date

Generally, the effective date for an award based on, inter alia, an original claim or a claim reopened after a final adjudication shall be fixed in accordance with the facts found, but shall not be earlier than the date of receipt of application therefore. 38 U.S.C.A. § 5110(a). If, however, a claim for service connection is received within a year following separation from service, the effective date will be the day following separation; otherwise, the effective date is the date of the claim. 38 U.S.C.A. § 5110(b)(1); 38 C.F.R. § 3.400(b)(2)(i). When an award is based on a claim to reopen a previously denied claim, the effective date will be the date of receipt of the new (i.e., reopen) claim or the date entitlement arose, whichever is later, unless new and material evidence was received within the relevant appeal period. 38 C.F.R. § 3.400(q). 

A specific claim in the form prescribed by VA must be filed in order for benefits to be paid or furnished to any individual under the laws administered by VA. 38 U.S.C.A. § 5101(a); 38 C.F.R. § 3.151(a). A claim is defined by regulation as 'a formal or informal communication in writing requesting a determination of entitlement, or evidencing a belief in entitlement, to a benefit.' 38 C.F.R. § 3.1(p). Any communication or action that demonstrates intent to apply for an identified benefit may be considered an informal claim. 38 C.F.R. § 3.155(a). Such an informal claim must identify the benefit sought. Id. 

Under 38 C.F.R. § 3.157(a), a report of examination or hospitalization will be accepted as an informal claim for increase or to reopen, if the report relates to a disability that may establish entitlement. However, there must first be a prior allowance or disallowance of a claim. See 38 C.F.R. § 3.157(b).

VA is required to identify and act on informal claims for benefits. 38 U.S.C.A. § 5110(b)(3); 38 C.F.R. §§ 3.1(p), 3.155(a). See also Servello v. Derwinski, 3 Vet. App. 196, 198-200 (1992). Upon receipt of an informal claim, if a formal claim has not been filed, an application form will be forwarded to the claimant for execution. If received within one year from the date it was sent to the claimant, it will be considered filed as of the date of receipt of the informal claim.

A. Service Connection for C-5 Quadriplegia

While the Veteran asserts his entitlement to an earlier effective date for the award of service connection for this disability, considering the record in light of the governing legal authority, the Board finds that no earlier effective date is assignable.

In a July 2003 NOD regarding the effective date for the award of SMC, the Veteran's representative reported that in 1983, during his initial care by the VA following his accident and discharge from the military, the VA doctor advised the Veteran that the cause of his paraplegia was not the accident, nor the residuals of that accident, but the surgery that had been performed on him following the accident. In multiple statements, on the June 2004 VA Form 9, and during his Board hearing, the Veteran and his representative indicated that, as VA had been on notice as to the theory that the Veteran's quadriplegia was due to improper medical treatment rather than the Veteran's willful misconduct and, as this portion of the Veteran's claim had remained unadjudicated, the Veteran is entitled to a 1983 effective date. 

In the alternative, in January 2007 memorandum, the Veteran's representative referred to the October 1988 Board decision, which cited from the September 1987 hearing in that "the [V]eteran maintained that the injuries received in the vehicle accident did not result in quadriplegia but that the paralysis resulted from improper medical treatment following the accident. This matter is not in an appellate status and is referred to the regional office for any action deemed appropriate." Therefore, the Veteran's representative contends that this theory of the claim was made informally no later than September 1987. The representative added that the eventually successful claim, that then quadriplegia was caused by the surgery, remained unadjudicated from the time that he asserted it until the time that he was finally granted service connection on it.

The Veteran and his representative's arguments to the effect that that the matter of the Veteran's entitlement to service connection for C-5 quadriplegia on the basis of improper care remained unadjudicated at the time of the January 1989 RO denial are inconsistent with the evidence of record. On review of the record, the Board notes that the January 1989 rating decision did, in fact, discuss that the evidence did not suggest that the Veteran was C-5 quad due to improper care. Therefore, entitlement to an effective date earlier than January 20, 1995, for the award of service connection for C-5 quadriplegia on this basis is not warranted. 

During the Veteran's Board hearing, and in a January 2007 memorandum submitted at that time, the Veteran's attorney raised another alternative theory and argued that the RO's January 1989 rating decision, which denied service connection for quadriplegia was never mailed to the Veteran at his last known address. Therefore, the Veteran was entitled to an effective date of January 13, 1986, the date of the first claim filed for service connection for quadriplegia. 

As for the Veteran and his representative's suggestion that he was not informed of the January 1989 denial and therefore the decision did not become final, the Board points out that the record contains a January 1989 rating decision and a notification letter addressed to the Veteran with a handwritten notation indicating that the letter was sent to a new address on November 2, 1989, and that after the November 2, 1989 mailing, such document were not returned to VA as undeliverable. Moreover, there is a presumption of regularity under which it presumed that government officials "have properly discharged their official duties." United States v. Chemical Foundation, Inc., 272 U.S. 1, 14-15 (1926). Therefore, it must be presumed that VA properly discharged its official duties by properly handling claims submitted by the Veteran. The presumption of regularity is not absolute; it may be rebutted by the submission of "clear evidence to the contrary." Statements made by the Veteran or his representative are not the type of clear evidence to the contrary which would be sufficient to rebut the presumption of regularity. Jones v. West, 12 Vet. App. 98 (1999); Mindenhall v. Brown, 7 Vet. App. 271, 274 (1994); Ashley v. Brown, 2 Vet. App. 62, 64 (1992). Hence, in this case, the Veteran's unsupported contention that he never received a copy of the November 2, 1989 notice letter and rating decision is insufficient to rebut the presumption that VA properly handled the Veteran's claim.

The Board notes that the attempt of the Veteran's representative to support his assertion as to non-receipt of the January 1989 rating decision by showing that February 21, 1989 and October 17, 1989 notice letters were returned and not delivered to the Veteran. However, such attempt must fail. 

The Veteran's representative presented a letter dated January 30, 1989, which was sent to the Veteran's address on West Cactus. Accompanying the letter was an envelope that was date stamped on February 9, 1989 and indicated that the Veteran's time for forwarding his mail had expired and his new address was on East Arabian Trail. A letter notifying the Veteran of the January 1989 denial of his claim for service connection for C-5 quadriplegia was sent on February 21, 1989 to the Veteran's West Cactus address. 

On VA Form 572, "Request for Change of Address", received on October 20, 1989, the Veteran's representative notified VA of the Veteran's new address on East Plaza Avenue. However, on October 27, 1989, another notification letter regarding the January 1989 rating decision was sent to the West Cactus address. The letter revealed that a copy was also sent to the Veteran's representative at the time. On October 31, 1989, the letter sent to the Veteran was returned by the U.S. Post Office with a label revealing that the letter was returned to the sender and there was no forward order on file for the Veteran. 

While the returned letter does demonstrate that there may have been difficulty reaching the Veteran at that time, the Board notes that the letter was resent to the Veteran on November 2, 1989. In addition, the notification letter originally mailed on October 27, 1989 specifically noted that the letter was remailed on November 2, 1989 to a new address. Although the Veteran testified at his Board hearing that he never received notice regarding the denial, there is no indication in the file that the November 2, 1989 mailing was returned by the U.S. Post Office. Furthermore, a VA Form 70-3770, "Requisition for Numbered Folder," reveals that the Veteran's representative requested to have the Veteran's claims file delivered to the PVA office. Furthermore, a copy of the October 27, 1989 notification letter was sent to the Veteran's representative at the time, or PVA. 

Accordingly, unless an exception to finality applies, the January 1989 rating decision issued is November 1989 became final (and, hence, provides no basis for assignment of an earlier effective date for any subsequently granted benefit). See 38 U.S.C.A. § 7105(c); 38 C.F.R. §§ 3.104(a), 20.302, 20.1103.

The Board emphasizes that, while VA does have a duty to assist a claimant in developing facts pertinent to a claim, it is the claimant who must bear the responsibility for coming forth with the submission of a claim for benefits under the laws administered by VA. See 38 U.S.C.A. § 5101(a); 38 C.F.R. § 3.151(a). To the extent practicable, VA does make every effort to identify and notify claimants of the potential entitlement to benefits. However, in this case, the claims file contains no communication from the Veteran or other document received between the 1989 final denial of the original claim for service connection but prior to January 20, 1995 that that could be interpreted as an informal claim for this benefit, or that otherwise put VA on notice that potential entitlement to service connection for C-5 quadriplegia had arisen. 

For all the foregoing reasons, the Board finds that there is no legal basis for an effective date earlier than January 20, 1995, for the award of service connection for C-5 quadriplegia. The pertinent legal authority governing effective dates is clear and specific, and the Board is bound by such authority. As, on these facts, no effective date is assignable, the claim for an earlier effective date must be denied as without legal merit. See Sabonis v. Brown, 6 Vet. App. 426, 430 (1994).

B. Special Monthly Compensation

Generally, the effective date of an evaluation and award of pension, compensation or dependency and indemnity compensation based on an original claim, a claim reopened after final disallowance, or a claim for increase will be the date of receipt of the claim or the date entitlement arose, whichever is the later. 38 U.S.C.A. § 5110(a); 38 C.F.R. § 3.400. 

In finding that an earlier effective date is not warranted for service connection for C-5 quadriplegia, it follows that an earlier effective date for the awards of special monthly compensation based on loss of use of both lower extremities, along with anal and bladder sphincter control, and the need for aid and attendance at a higher level of care is likewise not warranted. These awards were based upon the same claim for, and predicated on the award of, service connection claim, for C-5 quadriplegia, received on January 20, 1995. See 38 U.S.C.A. § 1114(k); 38 C.F.R. § 3.350(a). 

The pertinent legal authority governing effective dates is clear and specific, and the Board is bound by such authority. As, on these facts, no effective date earlier than January 20, 1995, is assignable for the award of service connection for C-5 quadriplegia, the claim for an earlier effective date for the awards of special monthly compensation based on loss of use of both lower extremities, along with anal and bladder sphincter control, and the need for aid and attendance at a higher level of care, must be denied as a matter of law. Sabonis, 6 Vet. App. at 426.


ORDER

An effective date earlier than January 20, 1995, for the award of service connection for C-5 quadriplegia, is denied. 

An effective date earlier than January 20, 1995, for the awards of special monthly compensation based on loss of use of both lower extremities, along with anal and bladder sphincter control, and the need for aid and attendance at a higher level of care, is denied.



____________________________________________
JACQUELINE E. MONROE
Veterans Law Judge, Board of Veterans' Appeals

Department of Veterans Affairs